Ashford v. Ins. Co.

AMANDA ASHFORD, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

## Kansas City Court of Appeals, May 29, 1899.

1. **Life Insurance**: INSURABLE INTEREST. One without fraud may insure his own life for the benefit of one not having an insurable interest in his life.

2. **Marriage**: CIVIL CONTRACT: COMMON LAW: WITNESS. A beneficiary in a life insurance policy is a competent witness as to her marriage to the deceased. Marriage being a civil contract may be made by competent persons without formal ceremony before an officer.

3. ———: EVIDENCE: COHABITATION AND REPUTATION: INSTRUCTIONS. At common law marriage may be established by cohabitation and reputation, but there must be a general reputation of the parties being husband and wife and a conflict in such repute will not establish the marriage. The evidence in this case reviewed and held not to warrant the giving of an instruction set out in the opinion.

4. **Life Insurance**: INNOCENT AND FRAUDULENT MISREPRESENTATION: INSTRUCTION: STATUTE. There is a distinction between a misrepresentation and a fraudulent misrepresentation and the words of section 5849, Revised Statutes 1889, "No misrepresentation made in obtaining or securing a policy of insurance," does not apply to a case of willful fraud but merely to cases of innocent misrepresentation; and where the policy makes misrepresentations warranties avoiding the policy, willful fraudulent misrepresentations will vitiate notwithstanding the statute, as where the assured represents himself as married to the beneficiary when in fact he is not.

5. ———: EVIDENCE: CHARACTER: BENEFICIARY. Though the beneficiary's reputation for virtue and chastity at the time of the trial be bad, it is not necessarily proper to ask her whether she had given birth to a child before her marriage.

*Appeal from the Harrison Circuit Court.*—HON. P. C. STEPP, Judge.

REVERSED AND REMANDED.

Ashford v. Ins. Co.

ALVORD & FRISBY and C. H. S. GOODMAN for appellant.

(1) We urge that the court erred in overruling the defendant's motion for new trial, for there was no evidence whatever that plaintiff had any insurable interest in the life of deceased; and this being the case the policy was void and no action could be maintained thereon.   Mutual Aid Society v. McDonald, 1 L. R. A. 238; Warnock v. Davis, 104 U. S. 775; Roller v. Beam, 6 L. R. A. 136; Ins. Co. v. McCrum, 36 Kan. 146; Cammack v. Lewis, 82 U. S. 643; Singleton v. Ins. Co., 66 Mo. 63; 3 Kent Com., side page 368, 11 Ed.    (2)    We confidently assert that in every case where a comon law marriage has been sustained or held valid by our appellate courts, there was an insurmountable difficulty or obstacle which prevented the parties from having the marriage solemnized after the usual form, and in addition to this the parties in each case in the most unmistakable manner proclaimed and announced to the world that they were to all intents and purposes husband and wife.   Dyer v. Brannock, 66 Mo. 391; State v. Gonce, 79 Mo. 600; State v. Bittick, 103 Mo. 183. (3)   Section 5849 can have no application to a case of this kind.   By the terms of the application read in evidence, all the statements and answers of deceased are made warranties, and if his statement that Amanda Ashford was his wife was not true, then the policy is void.   A representation that beneficiary was the wife of the assured when in fact she was not, works a forfeiture.   Holabird v. Ins. Co., 2 Dillon, 166; Bliss on Ins., p. 164.

J. C. WILSON and McCULLOUGH, PEERY & LYONS for respondent.

(1) The proposition that the policy would be void if the plaintiff were not the lawful wife of deceased, for the reason that she had no insurable interest in his life, can not

be sustained. 2 May on Ins., sec. 399 E; McFarland v. Creath, 35 Mo. App. 124; Heusner v. Ins. Co., 47 Mo. App. 344; Mut. Aid Ass'n v. Houghton, 103 Ind. 286; Mut. Ben. Ass'n v. Blue, 120 Ill. 121; Bursinger v. Bank, 67 Wis. 75; Ins. Co. v. Jenkins, 15 Ind. App. 297; 57 Am. St. Rep. 228; Scott v. Dickson, 108 Pa. St. 6; Aid. Ass'n v. Jones, 154 Pa. St. 29; Hienlein v. Ins. Co., 101 Mich. 250; Martin v. Stubbins, 126 Ill. 387; Sabin v. Phinney, 134 N. Y. 423; Clark v. Allen, 11 R. I. 439.     (2)     The court did not err in permitting plaintiff to testify to her remarriage to deceased, or to the fact that they made a contract or agreement to resume the relation of husband and wife.     Marriage is but a civil contract no matter how it may be solemnized or entered into.     A marriage may be proven by parol evidence of witnesses or of either of the parties to the marriage.     2 Greenl. Ev., sec. 461; Abbot's Trial Ev., p. 80, sec. 15; Bissell v. Bissell, 55 Barb. 325; 14 Am. and Eng. Ency. of Law, p. 525, sec. 9; 1 Whart. Ev., secs. 83, 87, 424, 429; In re Comby's Est. 19 Pa. Co. Ct. Rep. 184; 6 Pa. Dist. Rep. 1197; In re Strauss Est., 3 Pa. Dist. Rep. 425; In re Drinkhouser Est., 151 Pa. St. 294; White v. Maxey, 64 Mo. 552; Green v. Green, 126 Mo. 25; Hoyt v. Davis, 30 Mo. App. 309; Garvin v. Williams, 50 Mo. 206; Spradling v. Conway, 51 Mo. 54. (3)     The court did not err in refusing to permit defendant's counsel to ask the plaintiff upon cross-examination if she had not given birth to an illegitimate child at some time in the past, prior to her first marriage with the deceased.     "It will not be allowed in a court of justice to put a witness upon the rack as to past transactions, to rake in the ashes of long-forgotten scandals, and to uncover the scars of old wounds, in order to discredit a witness or overthrow his moral character." State v. Gesell, 124 Mo. 535; 1 Greenl. Ev., sec. 459; Whart. Crim. Ev., sec. 472; State v Parker, 96 Mo. 382; State v. Houx, 109 Mo. 654; DeArman v. Taggart, 65 Mo. App. 85.

ELLISON, J.—This action is based on a life insurance policy taken out by deceased in favor of plaintiff, he representing himself to be plaintiff's husband at the time he had the policy issued. He paid one premium and died before another payment became due. A rehearing was granted and the case again argued.

1. The defense is based mainly upon the contention that deceased and plaintiff were not husband and wife at the time the policy was issued. That therefore plaintiff had no insurable interest in the life of deceased and the policy being for that reason a mere wagering contract on the life of another was invalid. It is a matter of dispute between the parties whether deceased and plaintiff were husband and wife at the time the policy was issued; but for present purposes, we will assume they were not, and so assuming, we are of the opinion that the policy is not void on the ground of lack of insurable interest. It is well settled law that one who has no insurable interest in another's life can not insure that other's life. It is against public policy, a rule of policy founded, in great part, on the temptation which would present itself to the beneficiary. The beneficiary would have more interest in the assured's death than his life. But there is a well grounded distinction in this regard that has received repeated recognition; and that is, that the assured may, himself, insure his life for the benefit of one who has no insurable interest therein. The supreme court of Georgia said in Life Assurance Co. v. Paterson, 41 Ga. 338: "It would seem, when the person whose life is insured is himself the actor in the matter, the amount of temptation held out to others to take his life, may, as a general rule, at least, be left to *his* discretion." So we take it to be well established that where one of his own free will, without fraud, insures his own life (paying the premiums therefor) for the benefit of one not having an insurable interest in his life the policy will be valid. May on Ins., secs. 399 E, 112; Mut.

*Margin note: LIFE insurance; insurable interest.*

Aid Ass'n v. Houghton, 103 Ind. 286; Mut. Ben. Ass'n v. Blue, 120 Ill. 121; Bursinger v. Bank, 67 Wis. 75; Ins. Co. v. Jenkins, 15 Ind. App. 297; Scott v. Dickson, 108 Pa. St. 6; Aid Ass'n v. Jones, 154 Pa. St. 29; Hienlein v. Ins. Co., 101 Mich. 250; Martin v. Stubbins, 126 Ill. 387; Sabin v. Phinney, 134 N. Y. 423; Clark v. Allen, 11 R. I. 439. The distinction stated was expressly applied in McFarland v. Creath, 35 Mo. App. 112; a case involving a benefit society certificate. The point is ruled against defendant.

2.   As before stated, it is a matter of dispute whether deceased and plaintiff were husband and wife at the date of the application for the policy or afterwards. The facts, in a general way, were these: Deceased and plaintiff had been regularly married for about two years when they were divorced. In two weeks after the divorce they, as plaintiff testified, made a verbal agreement to assume the relation of husband and wife and after the lapse of some days lived and cohabited together until deceased died. It was while thus living together in this relation under such agreement that deceased applied for and obtained the policy in suit. By the terms of the application and policy he warranted, or at least represented himself to be a married man and that plaintiff was his wife. This warranty or representation is claimed to be a misrepresentation and is interposed as a defense. Plaintiff's claim in answer to such defense is two-fold: First, that there was no misrepresentation, since, as she claims, there was a common law marriage between her and deceased; and, second, if there was a misrepresentation and no marriage, yet such misrepresentation did not contribute to deceased's death and therefore, under section 5849, Revised Statutes, 1889, can not avail defendant as a defense. That section and the one following are as follows:

"Sec.   5849.   Misrepresentation.—No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or

render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury.

"Sec. 5850. Defense in Case of Suits.—In suits brought upon life policies, heretofore or hereafter issued, no defense based upon misrepresentation in obtaining or securing the same shall be valid, unless the defendant shall, at or before the trial, deposit in court for the benefit of the plaintiffs, the premiums received on such policies."

The verbal agreement to become husband and wife was shown by plaintiff and we must hold that she was a competent witness for that purpose. Green v. Green, 126 Mo. 25; Drinkhouser Est., 151 Pa. St. 294. That marriage is a civil contract which may be made between parties competent to make such contract, without the formal ceremony before a minister or civil officer designated by the statute, is established law. Dyer v. Brannock, 66 Mo. 391; Cargile v. Wood, 63 Mo. 501. That there was such informal marriage the testimony of plaintiff alone tended to prove.

MARRIAGE: civil contract: common law: witness.

But, at the trial, it was sought to more firmly establish the marriage by testimony that plaintiff and deceased cohabited as husband and wife and were reputed to be husband and wife. The testimony of plaintiff was direct evidence tending to prove the marriage itself. The other testimony concerning cohabitation and repute of being husband and wife was evidence to raise a presumption of marriage and from which a jury would be authorized to infer a marriage. The two branches of testimony are separate and distinct, and the court gave for plaintiff separate instructions, one on each branch. Number 4 declared the validity of a verbal contract of marriage without formality or ceremony. Number 5 was on the other branch and is as follows:

——: evidence: cohabitation and reputation: instructions.

"If the jury believe from the evidence that the plaintiff and Elijah J. Ashford, for any long period of time after the divorce and before making of said application, lived together publicly as husband and wife; that he passed himself for her husband, and she for his wife, introduced himself and herself to his friends and the public as her husband and she as his wife, cohabited with her as his wife and he as her husband, and held himself and herself out to the public generally as sustaining the relations of husband and wife by their general acts and conduct; then the jury are instructed that the presumption of law is, and the jury have the right to infer, that there had been a lawful marriage between the said plaintiff and said Elijah J. Ashford."

There was no evidence upon which this instruction could properly be based. On the contrary the evidence showed affirmatively that there was no sufficient reputation of marriage to raise the presumption of a marriage in fact. In order that marriage may be presumed there must be cohabitation, and, in addition, there must be a reputation with the people in the community or communities in which they live. "If parties cohabit together as man and wife, treat each other as such, and acknowledge the existence of that relation, *and thereby acquire a reputation* of being married among the people, the fact of marriage may well be presumed." Cargile v. Wood, 63 Mo. 501. (Italics ours). This reputation must be general. The parties must have a general reputation of being husband and wife, "and if there is a conflict in the repute, it will not establish a marriage." 1 Bishop M. & D., sec. 438. "Reputation consists of the belief and speech of the people who have an opportunity to know the parties and have heard of and observed their manner of living." Cargile v. Wood, *supra.* In this case the great weight of the evidence was against there being any marriage at all, yet we concede there was some evidence in that direction, but a presumptive marriage was not made out. For, while there was evidence

of cohabitation, there was none of reputation. On the contrary plaintiff and other witnesses testified to a concealment of her relations with deceased at different times and places. Several other facts developed in evidence showed there was no general repute of the parties being husband and wife. A brother of the plaintiff testified to their acting as husband and wife when they came to his home in Clinton on their travels. He said they "introduced themselves as that to everybody." "They were traveling in a wagon and everybody thought they were man and wife." When the manner of life this couple was living is considered, it will show how far the foregoing falls short of sufficient evidence of reputation. They were itinerants going about from place to place in a wagon, their travels beginning in the north end and closing in the extreme south end of the state. He was a great part of the time under the assumed name of Miller. He seemed to have no occupation, unless an occasional horse-trade could be so considered. The brother's observation of them was at Clinton where they stopped with them a short time and where deceased made application for the policy in suit. The instruction should not have been given.

But counsel doubtless in the belief that the jury would not find there had been a marriage, either on the testimony of a marriage itself or on testimony to establish a presumption of marriage, asked and obtained an instruction which declared that, "no misrepresentation, if any, contained in said application is under the law deemed material or sufficient to render the policy void, unless the matter so misrepresented shall have actually contributed to the death of the deceased, Elijah J. Ashford. The jury are therefore instructed that although they may believe said Ashford stated in his application for said policy that he was married to the plaintiff, when in fact no valid marriage existed

LIFE insurance: innocent and fraudulent misrepresentation: instruction: statute.

between them; and that he was in sound health, when in fact his leg was diseased by an ulcer or otherwise; that he was a farmer, when in fact he was a horse-trader, traveling through the country; yet if they further believe that said Ashford died of malignant or pernicious malarial fever and heart failure, and that neither of the matters hereinbefore mentioned actually contributed to the death of said deceased, then neither one nor all of said misrepresentations, even though made, is or was sufficient to render said policy void."

This instruction is based on section 5849 of the statute above quoted, and an important question in the case is raised by defendant's counsel challenging the application of such statute to a misrepresentation of the nature now under discussion. The policy provided that statements made in the application should be considered warranties and that if any statements were not true, the policy should be void. In such case we have no doubt (leaving the statute out of view) the statement by deceased that he was married was a material statement. The case concedes that the matter represented in no way contributed to deceased's death. The literal terms of the statute, standing alone, made the representation, in such condition of the case, immaterial and of no avail to defendant. Indeed the literal terms of the statute made misrepresentation of any kind immaterial. But is that the true meaning of the statute? We think it is not. The language is broad, but that its meaning should be limited, is clear from the terms of the section itself and the one following. The latter section expressly, or if not expressly, very clearly, recognizes that there may be. defenses by the company based on misrepresentations. It is true that misrepresentations of matters which contributed to the death would fall under the literal terms of the latter section, but the latter section does not confine itself to such misrepresentations. It includes misrepresentations of any kind in obtaining or securing the policy, save the class of misrepresentations meant by the preced-

ing section. Its terms are general and unlimited, except as limited by the preceding section.

And the preceding section, in our view, does not apply to a willfully fraudulent misrepresentation. The law recognizes a distinction between a misrepresentation and a *fraudulent* misrepresentation. Moncrief on Fraud and Misrepresentation, 83. There are a great many cases which are classed as "innocent misrepresentations." 1 Bigelow on Fraud, 410; Kerr on Fraud & Mistake, 57. Though should we assume it to be within the power of the legislature to say that one by willful artifice, or device, may ensnare another into a contract which he would not have entered into but for the fraud and deception and then enforce it against him, we can not assume the *purpose* to do so unless that purpose will bear no other reasonable interpretation. If the words of the statute, "no misrepresentation made in obtaining or securing a policy of insurance," apply to a case of willful fraud, then the legislature has declared that a misrepresentation made in corruption and fraud *which induces the contract* is lawful and may be practiced with impunity.

"There is believed to be no assignable limit beyond which fraud is destitute of legal effect. It vitiates every transaction, whether of contracts, of judicial proceeding, or otherwise, into which it enters. 'Fraud and deceit, by him who is trusted, are most odious in law.' 'The common law doth so abhor fraud and covin that all acts, as well judicial as others, and which of themselves are just and lawful, yet being mixed with fraud and deceit, are in judgment of law wrongful and unlawful.'

"When a man gives formal consent to a thing, impelled thereto by representations which he is induced to accept as facts, while they are not such, his act is not what it appears to be. His will does not coincide with what outwardly he does. He consents to the thing which is not, but not to the thing which is. And the party responsible for this wrong

and its effect can not avail himself of any supposed right grow-
ing out of the mockery of a contract; for *nemo ex proprio dolo
consequitur actionem*, no one is permitted to extract a right
from his own wrong." Sections 641, 642, Bishop on Con-
tracts.

Life insurance companies had, with the great growth of
their business, required an answer by the applicant to a great
number of questions, many immaterial, and many about mat-
ters which the assured in most instances was liable to be mis-
taken or misinformed. They included not only a history of
his own life but largely that of his ancestry. The policy
made warranties of these statements and the courts held that
in instances where any of them were untrue, though immate-
rial, they invalidated the policy. White v. Ins. Co., 4 Dillon
U. S. C. C. 177; Jeffries v. Ins. Co., 22 Wall. 47; Anderson
v. Fitzgerald, 4 H. L. C. 484.

To avoid this injustice and hardship on the assured the
legislature enacted the statute we have quoted. The act was
for the relief of the innocent policy holder. It was not in-
tended to facilitate the practice of fraud, or the gain of the
evil doer. Interpreted in that way would make of it a public
invitation to the evil disposed to profit by practices of the
grossest iniquity. It would force the courts to lend aid and
success to a case like this: A man in apparent full health
knows that he is afflicted with a disease of the heart and his
physician warns him and his family (or it may be, his creditors)
that death would almost certainly soon ensue. He plans and
conspires with these to procure a large life policy payable to
his estate by declaring that he was free from disease. That
his heart action was perfect. Shortly after thus imposing
himself upon the company he dies by casualty. Whereupon
the beneficiaries sue and confess the conspiracy, but rely on the
fact that he did not die by the particular matter in which
the fraud figured. I can not think any court would so inter-
pret the statute.

Or cases like these: Suppose that a woman disguised as a man obtains insurance from a company which does not insure women (and many of them do not), representing herself to be a man, and dies from a cause not peculiar to women, a cause common to men or women, in such case the fact that she was a woman did not contribute to her death. Yet can it be possible that the statute has application to such a case? If it has, then the insurer has no choice of whom he may insure. His freedom to contract as he pleases is gone. Again, it is well known, that the greater the age, the greater is the risk and the larger the premium. Suppose one obtains a policy falsely and fraudulently representing that he is thirty years of age, when in truth he is fifty, or beyond the age which the insurer accepts as risks. He dies by accident, or other means wholly disconnected from age or its incidents. Here the matter falsely represented in no manner contributed to his death; yet is there no defense for the fraud practiced? To give the statute the meaning and breadth of application contended for by plaintiff would render insurers a prey to all manner of fraud and deception, helpless in all instances save where the matter of the fraud contributed to the death. We think it ought not to be so interpreted.

We find in White v. Ins. Co., 4 Dillon U. S. C. C. 177, Judge Dillon, on demurrer to the answer, says of this statute that it should have "excepted wilful and fraudulent representations from its operation, although *it is probable that the courts may hold that such is its true construction*," and in charging the jury at the trial in that case, Judge Krekel said the statute did not apply to a case where the misrepresentations "were knowingly false and made with a view to deceive or mislead the company."

Plaintiff has cited us to Christian v. Ins. Co., 143 Mo. 460, a case where the assured committed suicide and the misrepresentation was as to other additional insurance. The court there said: "It is quite obvious that misrepresentations, however numerous, cut no figure unless they produce the result

pointed out in the section under comment." But the court in that case did not, and had no occasion to distinguish between innocent and fraudulent misrepresentations. For it is expressly stated: "The answer contains no allegations that defendant *would not have issued the policy* had it known the real state of the facts respecting which the answers were made. Nor does the answer contain nor the evidence disclose that any such misstatements in any way *contributed to the issuance of the policy*." Defendant properly places much reliance on that statement of the court. It was evidently made by Judge Sherwood, who wrote the opinion, with a view of disclosing that the court was not committing itself on the question of open and willful fraud which induced the contract. But in the case in hand, the answer makes such defense and we have therefore been put to the necessity of deciding it.

Leaving the statute aforesaid out of the consideration as not affecting the question, it is clear, as we have already said, that the representation that the insured was a married man was a material representation. Ins. Co. v. White, 100 Pa. St. 12; Jeffries v. Ins. Co., 22 Wall. 47. Nor can it be said that the materiality of the representation depends alone upon the force of the law. It depends partly on the law, of course, especially as to its being given effective force. But the parties themselves made it material by the contract. As a free agent the company had the right to refuse to contract except upon the basis of the deceased's telling the truth about matters which the *company* deemed material. The deceased accepted the terms and agreed they should be material. And they should be held material except where controlled by the statute. In the case last cited, the supreme court of the United States said:

"The jury may say, as the counsel here argues, that it is immaterial whether the applicant answers truly if he answers one way, viz., that he is single, or that he has not made an application for insurance. Whether a question is material

depends upon the question itself. The information received may be immaterial. But if under any circumstances it can produce a reply which will influence the action of the company, the question can not be deemed immaterial. Insurance companies sometimes insist that individuals largely insured upon their lives, who are embarrassed in their affairs, resort to self-destruction, being willing to end a wretched existence if they can thereby bestow comfort upon their families. The juror would be likely to repudiate such a theory, on the ground that nothing can compensate a man for the loss of his life. The juror may be right and the company may be wrong. But the company has expressly provided that their judgment, and not the judgment of the juror, shall govern. Their right thus to contract, and the duty of the court to give effect to such contracts, can not be denied."

In the foregoing discussion we have not determined whether the representation was made a warranty by the contract, or merely a representation; since if it be merely a representation, it has been made material by the parties and its falsity has been made a ground for annulling the contract. In such case its effect is to avoid the policy. Price v. Ins. Co., 17 Minn. 497; Campbell v. Ins. Co., 98 Mass. 381.

The trial court ruled that a question asked of plaintiff by defendant whether she had given birth to a child before her marriage was improper. This was an isolated act of several years before the time of the trial. The court's ruling was right. State v. Gesell, 124 Mo. 535. The plaintiff's reputation for virtue and chastity was shown to be bad at the time of and before the trial, by several uncontradicted witnesses, but the range of inquiry had not been invited back by the plaintiff herself to the distance which would have made the inquiry pertinent. It is therefore to be distinguished from State v. Sasseen, 75 Mo. App. 197.

——: evidence: character: beneficiary.

The judgment will be reversed and the cause remanded. All concur.