S. M. VAN CLEAVE, Respondent, v. UNION CASUALTY & SURETY COMPANY, Appellant.

**Kansas City Court of Appeals, February 5, 1900.**

1. **Accident Insurance: WARRANTIES: APPLICATION, PART OF POLICY.** An application for accident insurance is examined in connection with the policy issued thereon and held to be a part of said policy and its statement to be warranties, since they were so intended by the parties.

2. ———: ———: CONDITIONAL PAYMENT. A policy of insurance by reference may incorporate the statements of the application into the policy and thereby make the payment by the insurer conditional on the truth of such statements which thereby become warranties instead of representations.

3. Insurance: WARRANTIES: REPRESENTATION. A warranty must be literally fulfilled while a representation may be only substantially complied with and a recovery even had if its falsity is not material to the insurer; but if material its falsity will vitiate the policy.

4. Accident Insurance: BENEFICIARY WITHOUT INSURABLE INTEREST. One may without fraud insure his own life for the benefit of another not having an insurable interest in his life.

5. ———: REPRESENTATION: APPLICATION: EVIDENCE: STATUTE. The evidence relating to an application for accident insurance is reviewed and its representation that the beneficiary was the wife of the applicant when in fact she was his mistress, is found to be fraudulent and made with intention to deceive, and section 5849, Revised Statutes 1889, is inapplicable, Ellison and Gill, JJ., holding the statute applicable even though the misrepresentation be a warranty unless it be a willfully fraudulent misrepresentation.

6. Insurance: SOLICITING AGENTS: SECRET INSTRUCTION: REPRESENTATION. While secret instruction to a soliciting agent will not vitiate a policy secured by him and accepted by the company, yet the ignorance of such instructions by the assured will not excuse him from making truthful representation in his application.

7. Accident Insurance: PROOF OF LOSS: AGREEMENT TO PAY: CONSIDERATION. Though a policy of accident insurance might be avoided by reason of misrepresentation in the application, yet, where after death of the insured full information as to the falsity of such representation is laid before the adjusting officer and he agrees to pay the policy to the assignee of the beneficiary, if he will procure the release of the latter, the insurer becomes liable to pay the same upon the presentation of such release and the consideration for the promise is sufficient.

8. ———. ADJUSTER: SCOPE OF AGENCY: APPARENT AUTHORITY. Where an assistant adjuster while occupying the office and performing the duties of the chief adjuster of an insurance company, makes a contract agreeing to pay a policy on certain conditions, such agreement is within the apparent scope of his authority and binds the insurer, notwithstanding secret limitations of his authority.

9. **Trial Practice:** CONFLICTING EVIDENCE: VERDICT. Where the evidence is conflicting but tends to support the verdict it can not be disturbed.

Appeal from the Jackson Circuit Court.—*Hon. E. L. Scarritt*, Judge.

AFFIRMED.

*Pratt, Dana & Black* for appellant.

(1) Defendant's demurrer should have been sustained, and at the close of the testimony in the case the court should have declared the law in defendant's favor on the first count of the petition. This case is on all fours with the recent decision of this court in Ashford v. Ins. Co., 2 Mo. App. Rep. 766; 80 Mo. App. 638; 19 Am. and Eng. Ency. of Law, p. 565; Keener v. Grand Lodge, 38 Mo. App. 550. (2) The court should have given defendant's third instruction, as plaintiff showed no right to recover under the second count of his petition. Bishop on Contracts [Enl. Ed.], sec. 488; Pierce v. Kibble, 51 Vt. 559; Melchior v. McCarty, 33 Wis. 252, 254.

*Yeager & Strother* for respondent.

(1) Whether the beneficiary named in the policy had an insurable interest in the life of the insured is immaterial, because the evidence shows that the policy was taken out by the insured; and the rule is that where the insured takes out an accident policy and pays the premium himself, as in this case, he may have named as beneficiary one having no insurable interest in his life. Robinson v. Accident Ass'n, 68 Fed. Rep. 825; Ins. Co. v. Barr, 68 Fed. Rep. 873; Ins., etc., Co. v. Baum, 29 Ind. 236; Mallory v. Ins. Co., 47 N. Y. 54; Masonic Ben. Ass'n v. Bunch, 109 Mo. 560, 577. (2) The

statement in the application in regard to the relation of Mamie Van Cleave alias Mamie Crecelius to the insured was neither a representation of fact nor a warranty. Ins. Co. v. Martin, 133 Ind. 376; Lampkin v. Ins. Co. (Colo. App.), 56 Pac. Rep. 1040. (3) The fact that Mamie Crecelius was named in the policy as Mamie Van Cleave, and that she was not the lawful wife of the insured, is no defense in this case. The policy gave her residence and the evidence clearly identifies her as the person intended, and shows that she was known by both names. Overbeck v. Overbeck, 155 Pa. St. 5; De Grote v. De Grote, Pa. St. 50; Story v. Williamsburgh, Mass. Mut. Ben. Ass'n, 95 N. Y. 474; Bachman v. Supreme Lodge, 44 Ill. App. 188; Bogart v. Thompson, 24 Misc. (N. Y.) 581; 53 N. Y. Supp. 622. (4) The policy sued on is "a policy of insurance on the life * * * of any person" within the terms of section 5849, Revised Statutes 1889. Logan v. Fidelity & Casualty Co., 146 Mo. 114. (5) Even if the court should hold that the application was a part of the policy, and that the statement therein of the relation of the beneficiary to the insured was a representation of a material fact and a warranty, still the falsity of that statement is no defense to this suit, because the matter misrepresented in no way contributed to the death of the insured. 2 R. S. 1889, sec. 5849; Klostermann v. Ins. Co., 6 Mo. App. 582; Thassler v. Mut. Life Ass'n, 67 Mo. App. 505; Christian v. Ins Co., 143 Mo. 460; White v. Provident Savings Life Assur. Soc., 163 Mass. 108; Levie v. Ins. Co., 163 Mass. 117. (6) Section 5849 is a valid law, binding upon defendant, which is a Missouri corporation, and entered into and became a part of the policy sued on, which is a contract executed and delivered in Missouri. See authorities, *supra*. The suicide statute: 2 R. S. 1889, sec. 5855; Keller v. Ins. Co., 58 Mo. App. 557; Logan v. Fidelity & Casualty Co., 146 Mo. 144. The "valued policy" law: 2 R. S. 1889, secs. 5897, 5898; Daggs v. Ins. Co., 136 Mo. 382. The

law prohibiting provisions limiting the time for bringing suits: 1 R. S. 1889, sec. 2394; Karnes v. Ins. Co., 144 Mo. 413. The law prohibiting co-insurance clauses in policies of insurance: Laws of 1893, p. 186. (7) The plaintiff was entitled to recover on the second count of the petition. Williams v. Jensen, 75 Mo. 681, 684, 685; Doctor and Student [Muchall's Ed., 1874], Dialogue 11, Ch. 24, p. 177. (8) Neither the insured nor the beneficiary, nor plaintiff nor any one representing them, was ever notified of defendant's by-laws, or of the limitations, if any there were, upon the authority of defendant's adjuster. He assumed the authority to make the contract alleged in the second count of the petition, and defendant is bound by his acts and agreements. Lungstrass v. Ins. Co., 57 Mo. 107; Ten Broek v. Boiler Com. Co., 20 Mo. App. 19.

SMITH, P. J.—Action on accident policy of insurance issued to one Charles A. Van Cleave. The petition was in two counts, in the first of which, amongst other things, it was alleged that while said policy was in force, the said insured sustained bodily injuries through external, violent and accidental means within the terms of said policy, in that he was killed by reason of the collision of two trains on the Santa Fe Railway; that after the death of the said insured, Mamie Van Cleave, the beneficiary named in said policy, complied with all the terms and provisions of said policy on her part; that afterwards, the said beneficiary, for value received, assigned all her right in said policy to plaintiff, of which the defendant was duly notified, etc.; whereby, plaintiff became entitled to receive the net amount of said policy, etc., and for which he demanded judgment. And the allegations of the second were substantially the same as those of the first with certain additions thereto which we shall allude to, further along.

The answer of the defendant alleged that the insured, prior to the issuance of said policy, made an application therefor, upon which the said policy was based, and that said application, and the statements therein made, constituted, as expressly stated in said policy, considerations for the issue thereof; and said statements were, by the terms of said application, which was signed by said insured, each and all warranted by him to be true; and such warranties formed a part of the consideration for the issuance of said policy, and that said statements were material representations inducing the issue thereof; that prior to the issuance of said policy the said insured made his application in writing to defendant to be insured by it against accidental death or injuries, and in making said application was asked and required by defendant to answer certain questions and state the facts in regard to certain matters upon a blank furnished him for the purpose; that said application was made and signed by said insured, who at the time warranted each and all of the statements contained therein to be true and complete, and said policy was based upon and issued partly in consideration of the warranties made and contained as aforesaid in said application.  Defendant further avers in said application said insured warranted and represented himself as married, and warranted and represented that the name of his wife was Mamie Van Cleave, and requested in said application that the policy for which he applied should be made payable, in case of his death by accident under the provisions thereof, to said Mamie Van Cleave, whose relationship to him he warranted and represented to be that of wife, and defendant avers that said statements were not true; that he was not married at the time to anyone; that there was no person named Mamie Van Cleave; that the woman, if there was any, whom said Charles A. Van Cleave so falsely represented and stated to be named Mamie Van Cleave and to be his wife, was not only not his wife, but

was or had been his mistress, and was or had been living, associating and cohabiting with him illegally and unlawfully. Defendant further avers that said false warranties, representations and statements were made by said insured for the purpose of inducing defendant to issue to him said policy, and did induce the issuance thereof, and that but for said false warranties, representations and statements defendant would not have issued said policy. Defendant further avers that the relation existing so as aforesaid between insured and the woman whom he so falsely warranted and represented to be his wife, was unlawful and prohibited by the laws of the states of Missouri and Kansas, as well as by the common law.

The replication was to the effect that whatever representations or statements, whether true or false, were made by said insured in and about obtaining and securing the policy sued on herein, in no way contributed to the death of said insured; but the death of said insured was directly caused by the external, accidental and violent means alleged in the petition herein, and whatever representations or statements were, or might have been made by said insured in obtaining and securing said policy, were and are wholly immaterial and in no way affect the validity of said policy, by reason of the provisions of the statute of the state of Missouri in such cases made and provided.

There was a trial by the court without the intervention of a jury. At the conclusion of the evidence the court, as a matter of law, declared that, under the pleadings and evidence its finding must be for plaintiff and gave judgment accordingly. It does not appear upon which count the finding was made.

It is contended that the application is not a part of the policy sued on. It appears from the undisputed evidence that O'Brien, the agent of defendant who wrote the policy in issue, met the insured at the Union Depot in Kansas City just as the latter's train was about to leave there on its run.

The former handed the latter what is termed a "stub," which was read by such latter. The "stub" inquired for the name, age, residence, occupation, beneficiary, the relationship of such beneficiary, etc. On account of the hurry, the latter gave the former his answers to such inquiries which were then written down by the former on the "stub." The blank application was read and signed by insured and the policy delivered to him. The defendant's agent, a few days thereafter, filled out the application in accordance with the answers written on the "stub." The statements contained in the application are those made by the insured to the defendant's agent before the delivery of the policy. It is not contended that the facts contained in the application are different from those stated in the answers written on this "stub." It was for the convenience of the insured that the answers which were written on the "stub" were not also written in the application before the delivery of the policy. The two are identical and no reason is seen for impugning either the correctness or the integrity of the application.

An important question raised by the appeal is that of whether or not the statements of facts set forth in the application are warranties. The application is in words and form as follows:

"To the Union Casualty Company:

"I hereby apply for a policy of insurance against bodily injuries caused by external, violent and accidental means, said policy to be based upon the following statement of facts.

"* * *

"15. Policy to be payable in case of death by accident under the provisions thereof to:

"Name in full: Mamie Van Cleave.

"Residence: 771 Olive St., Leavenworth, Kans.

"16. Whose relationship to me is that of wife.

"* * *

"22. I warrant each and all of the foregoing statements to be true and complete."

The said "statement of facts" is divided into twenty-two paragraphs, the only three of which that are material to consider here we have just quoted. The policy recites that, in "consideration of the warranties in the application for this policy and the order" on the paymaster of said railway company for the future payment of the premiums the risk was taken by the defendant. The statement of the application, it seems to us, was as much a part of the policy as if it had been written therein.

And the inquiry now is, whether such several statements are to be considered warranties? As said in Lampkin v. Ins. Co., 52 Pac. Rep., 1040: "The question frequently arises, however, whether a statement in an application is a warranty, and the courts must determine it from a consideration of the language, the context and such other matters as may throw light upon the intention of the parties. The ultimate object is to ascertain what the intention of the parties was, and this fixes the character of the statement. Even materiality may thus sometimes be necessary to be considered as an aid to the determination of the question as to whether or not it was a warranty.

"Parties will not be held to have entered into a contract of warranty unless they clearly intended it, and whether or not this is the case will depend upon the form of the expression used and the apparent purpose of the insertion and, sometimes, upon the connection or relation of the parties to the instrument." May on Ins., secs. 164, 170. And so it has been held that statements in applications for insurance are ordinarily representations merely, unless converted into warranties by reference to them in the policy and a manifest purpose that the whole shall form one entire contract. Ins. Co. v. Meyers, 55 Miss. 479.

Van Cleave v. Union Cas. & S. Co.

Applying these rules and it seems to us perfectly plain that the statement made by the applicant in the sixteenth paragraph of his application that the beneficiary designated in the preceding paragraph sustained to him the relation of wife was intended to be considered by both parties to that instrument as a warranty. The said fifteenth paragraph named the beneficiary to whom the indemnity was to be paid in case of accidental death under the provisions of the policy, and the succeeding one stated the relation which the beneficiary sustained to the applicant to be that of wife. This relation is stated in an independent paragraph. It is therein asserted as a fact. In one of said paragraphs the beneficiary is designated; and in the other, her relation to the applicant. The independent inquiry was made, in the "stub," of the applicant what relation the person he had already designated as beneficiary sustained to him, and his answer was that she was his wife. By the twenty-second paragraph of the statement already referred to and quoted the applicant "warranted the foregoing statements to be true." This discloses an unequivocal intention of the applicant that the several statements of fact made in the application should be taken as warranties. The reference in the policy thereto shows that the application was accepted and the contract entered into upon the condition that the statements in such application were warranties. This, we think, was the intention of the parties evinced by the language of the statement and the policy. The two must be taken together as one entire contract, and when so considered there is no doubt left but that the statement in the application was intended by the parties to be warranties. We therefore conclude that the statement of the application that the beneficiary sustained to the applicant the relation of wife was a warranty.

It is conceded that the beneficiary was not at the time of her designation the wife of the applicant, but that of one Crecelius. These facts standing conceded, as they do, the

further question arising is, whether they vitiate the policy? In section 12 of Cook on Life Insurance, it is stated that, although a contract of insurance is in essence a mere contract to pay money on the happening of a specified loss or injury, yet in practice the happening of such loss or injury is not the only condition on which such payment depends. Besides this, the payment is commonly made conditional on the truth of certain statements made by the applicant. The falsity of such statements prevents the liability of the insurer from taking effect. Such statements are called warranties. In another section—15—the same author states that, the policy may by reference incorporate all or a part of the statements in the application, so as to make the payment by the insurer conditional on the truth, not merely of any statements in the policy itself but, also, on the truth of answers contained in the application. Such statements then become warranties instead of representations. In Anderson v. Fitzgerald, 4 House of Lords Cases, 484, it is said that, nothing is more reasonable than that parties on entering into a contract of life insurance should determine for themselves what they think to be material and if they choose to do so and stipulate that, unless the assured shall answer questions accurately, the policy or contract which they are entering into shall be void, it will be perfectly open to them to do so, and his false answer will then avoid the policy.

The difference between a representation and a warranty is that while the latter must be literally fulfilled it is sufficient if the former be substantially complied with. In case of warranty, the parties stipulate the materiality of the matters warranted and cut off all inquiry concerning it. It must be true or there is no contract. A representation may be untrue and a recovery had on the policy if the falsity is not material or prejudicial to the insurer. Life Ins. v. Rogers, 119 Ill. 474; Life Ins. Co. v. Johnston, 80 Ala. 467; Life Ins. v. Neider, 39 Ind. 476; Witherell v. Ins. Co., 49 Me. 200; Ins.

Co. v. Guebe, 12 Minn. 82. It has been declared by a number of courts of the very highest respectability that in a case of a warranty the contract is conditioned on the absolute truth of the statement, whether made in good faith or not, and the question whether such statement is, or is not material is not involved. Cazenove v. British Equitable Co., 28 L. J. C. P. 529; Barteau v. Phoenix Mutual Co., 67 N. Y. 595; Continental Co. v. Rogers, 119 Ill. 474 (*ante*); Wilkinson v. Ins. Co., 30 Iowa, 119. In Ashford v. Ins. Co., 80 Mo. App. 638, it was stated that, "the policy provided that the statements made in the application should be considered warranties and that if any statement were not true the policy should be void. In such case we have no doubt, leaving the statute out of view, the statement that he was married was material." If material to the risk, the falsity of the representation vitiates the policy. Parties have a right to make such a contract as they please, and if they agree that the truth of a certain statement shall be material to the validity of the contract the court will not interfere.

The beneficiary in the policy sued on most manifestly had no insurable interest in the life of the insured. It is well established that where one of his own free will without fraud insures his own life (paying the premiums therefor) for the benefit of one not having an insurable interest in his life, the policy will be valid. Ashford v. Ins. Co., *supra*. It is alleged in the answer, and established by the uncontradicted evidence, that but for said false representations made by the insured in his application, to the effect that the beneficiary therein named was his wife, the contract would not have been entered into. In the defendant's manual of railroad accident insurance, issued for the government of general agents and soliciting agents, and for the management of the home office, as to insuring railway employees, an applicant for railway accident insurance was restricted in the selection of a beneficiary or beneficiaries, to husband, wife, father, child,

brother, or sister, or to the "executor, administrator or assigns." There was an exception to this rule which provided. that a creditor or friend may become a beneficiary because of a tangible honorable interest in the life of the applicant, and when a creditor or friend was named, the interest of such beneficiary was required to be stated either in the application or by correspondence with the home office. It is thus seen that the agents of the defendant were impliedly prohibited from accepting an application when the beneficiary was other than one of the several classes of persons therein specified. No policy would have been issued on the application of the insured, or, if issued, approved by the home office, had he disclosed the fact that the beneficiary named by him was his kept mistress. In view of this, we can not doubt but that the representation was fraudulent and made with an intention to deceive.

But the plaintiff objects that this rule of the defendant was in the nature of a secret instruction to its soliciting agents, of which the insured had no notice and that therefore it cut no figure in the transaction between the insured and the defendant. It may be, and doubtless is, true that where the agent of an insurance company is furnished with blanks and is authorized to solicit insurance and write policies, that he would have the apparent authority to accord to an applicant the privilege of naming as beneficiary anyone he saw fit, and that if he issued a policy in accordance therewith, and the same should be accepted by the officers of the company authorized to finally approve the issue of the same, that it would bind the company, in case of a loss or injury, under its provisions. But while this is so, the want of knowledge by the insured of the existence of said rule did not excuse him from making truthful representations in his application in respect to facts about which the defendant had inquired of him and which it deemed material to the contract.

If the covenant of the assured, warranting the statement

in his application for the insurance to be true, that the beneficiary therein named was then his wife was not fulfilled, or complied with, then no operative contract was formed or entered into between the parties; and this, without regard to the question of public policy so much discussed in the briefs of counsel. As already stated, the answer of the defendant was made material by the agreement of the parties, and that therefore any inquiry in respect to that matter was cut off. It has been many times ruled that to defeat a policy it is not required to find the statement contained in the application was fraudulent. Digby v. Ins. Co., 3 Mo. App. 603; Riddle on Ins., sec. 531, note 3 on page 532.

But it is insisted by the plaintiff that even if it is held by us that the application is a part of the policy and that the statement therein of the relation of the beneficiary to the insured was a warranty, that still the falsity of such statement is no defense to the action because the matter so untruthfully stated in no way contributed to the death of the insured. Where a statement contained in an application is a warranty, it is not a representation; but, if it be contained in an application where there is no warranty, then it is no more than a written representation. A representation, whether written or verbal, when untrue or false, is a misrepresentation. A misrepresentation may be innocent, in good faith or fraudulent. If we are correct in the conclusion that the statement made by the insured in his application, viz.: that the beneficiary therein named by him was then his wife, was converted into a warranty and was by the agreement of parties made material to the risk, the question of misrepresentation is not in the case and section 5849 of the statute is inapplicable. But if the statement in the application is to be regarded as a misrepresentation it was not an innocent misrepresentation, but a fraudulent one made as to a fact which was, by the agreement of parties, deemed and made material. The statute has no application to misrepresentation of the

latter kind. Ashford v. Ins. Co., *supra.* Fraudulent mis-representation, if material to the risk, will vitiate the policy, whether or not it actually contributes to the contingency or event on which such policy is to become due and payable. The plaintiff's criticism to the construction given by us to said section 5849 in the opinion in the last cited case has not shaken our conviction as to its soundness. Our conclusion is that on the pleadings and evidence the plaintiff was not entitled to recover on the first count of his petition.

The facts alleged in the first count were supplemented in the second by others to the effect that the real name of the beneficiary in said policy was not Mamie Van Cleave but Mamie Crecelius, and that she was not the wife of the insured, who was, at the time of the issue of the said policy, an unmarried man, etc.; that on the fifth of October, 1897, the beneficiary had delivered to the defendant an affidavit and proofs of death which disclosed all the facts in regard to the issue of said policy, the injuries and subsequent death of the insured, the real name of the said beneficiary and the relations existing between the latter and the insured, etc., and that thereafter plaintiff demanded of defendant that it pay him the amount due under said policy, and that on the fourteenth day of the next succeeding month the defendant agreed to and with plaintiff to pay him the amount of said policy on January —, 1898, upon the consideration and condition that he would procure from said beneficiary a release of said defendant from all claims and demands of every kind by reason of the issuance of said policy and the death of said insured, and that such release should be delivered to defendant upon the payment to plaintiff of the amount due on said policy, which release plaintiff then undertook to procure; that plaintiff procured said release in form as required by defendant and notified it of the same; that after the time fixed by defendant for the payment of the amount

of said policy plaintiff demanded payment, etc., which was refused.

It appears from the evidence that Mr. Strother, who was plaintiff's attorney, went to the office of the defendant's superintendent and manager of its claim department. A person in that office inquired of him what it was he wanted and he answered that he wanted to see the superintendent in regard to a claim against the defendant. The former, after making some inquiry relating to the claim, etc., took the latter into the office occupied by Mr. Atwood, which was that of chief adjuster of the defendant. It seems the defendant then had no chief adjuster but that Mr. Atwood, who had been the assistant chief adjuster was occupying the office and performing the duties of chief adjuster for the time being. Mr. Strother made known the purpose of his visit to Mr. Atwood, who thereupon took up with him plaintiff's claim and entered into a discussion of the same. The result of the meeting was the entering into the agreement alleged in the second count of the plaintiff's petition. Although the testimony of Mr. Atwood and that of his stenographer are somewhat at variance with that of Mr. Strother, the latter very fully sustains the allegations of the second count of the petition, in substance, that if plaintiff would procure the release of the beneficiary in the policy the defendant would, on the delivery thereof, pay the amount claimed under the policy. It also appears from the undisputed evidence that Mr. Strother procured the said release and notified the defendant of that fact, etc.

Mr. Atwood was in charge of the office of the defendant's claim department. In entering into the agreement to pay the plaintiff's controverted claim on the performance of the condition specified by him he was acting within the apparent scope of his authority. If he had any private instructions, or if there was any limitations imposed by the president

or the by-laws of the defendant on his apparent authority they were in no way brought to the knowledge of the plaintiff's attorney. The act of Mr. Atwood was done in behalf of his principal. The law would presume no further than that his authority was limited by the apparent scope of his principal in the branch of the general business in which he was engaged. We think the transaction between the plaintiff and Mr. Atwood was within the apparent scope of the latter's authority and the limitations, if any, that were imposed upon his authority in no way bound plaintiff. He assumed the authority to make the said agreement and by it the defendant must be bound (Lungstrass v. Ins. Co., 57 Mo. 107; Ten Broek v. Winn Boiler Co., 20 Mo. App. 19; Riddle on Ins., sec. 119), provided it was supported by a sufficient consideration, which, we think, was the case. Williams v. Jensen, 75 Mo. 681; Wirt v. Schuman, 67 Mo. App. 172; 2 Kent Com. [2 Ed.], 465. The authorities referred to by the defendant are inapplicable to a case like this, as is seen from what has been said by us in discussing the liability under the first count. The non-liability of the defendant on the first, count is not founded on the theory of either of the defendant's refused instructions, but on that of a warranty uninfluenced by considerations of public policy.

The defendant insists that the finding of the court on the second count was against the weight of the evidence. The rule is that, when the evidence is conflicting and there is substantial evidence to support the verdict it will not be disturbed. Nor do we perceive any error was committed in respect to the admission or rejection of evidence that was prejudicial to defendant. In our opinion, the evidence under the second count was sufficient to support the finding of the court and that the judgment should accordingly be affirmed. All concur.

Van Cleave v. Union Cas. & S. Co.

ELLISON AND GILL, JJ.

Parts of the foregoing opinion, we think go too far. We believe that even though a misrepresentation is made a warranty, yet the statute, section 5849, Revised Statutes 1889, will nevertheless apply and avoid a defence on that ground, unless it be a willfully fraudulent misrepresentation as stated in Ashford v. Ins. Co., 80 Mo. App. 638.