## JOHN OBUCHON, Respondent, v. THOMAS M. BOYD, Administrator, Appellant.

**St. Louis Court of Appeals, February 18, 1902.**

1. **Practice, Appellate:** CONFLICTING TESTIMONY: VERDICT. In the case at bar, the testimony is too conflicting and too nearly balanced for a court of error to interfere with the verdict on the ground that it was unwarranted or was the result of partiality or prejudice.

2. **Evidence:** COMPETENCY OF: ADMISSIONS OF PARTY CHARGED WITH SIGNING A NOTE. Where the sole issue is whether deceased signed a certain promissory note, no statement or admission made by him is competent unless it tends to prove he executed the note or that it was his obligation; but the admission need not be that he signed his name to the note, or any similar collection of words, to have that effect. The deceased may have made various statements and used various forms of expression from which the inference could properly be drawn that the instrument in question was his promise and act. All that is required is that it should appear that deceased was talking about the note and he knew he was talking about it and made a declaration in reference to it against his interest.

3. **Procedure, Appellate.** It is within the court's discretion to say
when counsel shall be rebuked for improper remarks in their argu-
ments, and this, like all other matters referred to the discretion of
the trial court, can only be reversed by a court of error when it
is palpable there was an abuse of discretion below.

Appeal from Ste. Genevieve Circuit Court.—*Hon. Frank R.
Dearing,* Judge.

Affirmed.

*T. B. Whitledge* and *Smith & Anthony* for appellant.

(1)   The alleged promissory note sued on, imports a con-
sideration, and can only be denied or inquired into by a proper
plea for that purpose, and as none was filed, all plaintiff's evi-
dence in rebuttal tending to prove admissions made by Coff-
man to the effect "that the note was all right or was good,"
was incompetent, for the reason that under defendant's special
plea of *non est factum* only the single issue that Coffman did
not make the note, was tendered for trial.   Promissory notes
importing a consideration partake of the dignity of sealed in-
struments.  Ferguson v. State Bank, 11 Ark. 512; Bradford v.
Rose, 3 Bibb (Ky.) 238; State to use v. Ferguson, 9 Mo. 289;
Oak Grove, etc., Cattle Co. v. Foster, 7 N. Mex. 650.   (2)
Our statutes elevate bills and notes into specialties with respect
to the question of consideration.   County of Montgomery v.
Auchley, 92 Mo. 129; Muldrow v. Caldwell, 7 Mo. 566; Bliss
on Code Pleading, sec. 269; 1 Chitty on Pleading (16 Am.
Ed.), p. 511; English v. Jersey City, 42 N. J. L. 275; 1 Greens
New Pract., pp. 219, 220; Dale v. Roosevelt, 9 Cowen 312;
Monitor Plow Co. v. Born, 33 Neb. 749; Patricks Guardian v.
Carr, 50 Miss. 206.   (3)   Evidence of failure of consideration
is not admissible.  Bollinger v. Thurston, 2 Mill Const. (S.
Car.) 447.   (4)   Rebuttal proof of the consideration of the
note, or that it was "good" or "all right," was incompetent, and

an effort to bolster up a thoroughly impeached and ruined witness. Nelson v. Bradhock, 44 Mo. 598.

*John V. Noell* for respondent.

(1) In actions at law, it is for the jury to determine the credibility of witnesses and the weight of their testimony; and unless there is no evidence tending to establish the facts found by the jury, an appellate court will not set aside the verdict on the ground that it is against the weight of evidence. James v. Life Ass'n, 148 Mo. 1; Downing v. Railroad, 70 Mo. App. 657; Honeycutt v. Railroad, 40 Mo. App. 674; Garneau v. Herthel, 15 Mo. 191; Chadwick v. Bumpus, 45 Mo. 111; Brown v. Railroad, 50 Mo. 461. (2) It is the exclusive province of trial courts to set aside verdicts as opposed to the weight of evidence. The limit of the appellate court's duty is to vacate verdicts only when they bear the unmistakable stamp of bias or mistake. O'Hara v. Iron and Foundry Co., 66 Mo. App. 53; Fulkerson v. Long, 63 Mo. App. 268; Reid v. Life Ins. Co., 58 Mo. 421; Hull v. Railroad, 60 Mo. App. 593. (3) Testimony can not be excluded as irrelevant which has a tendency, however remote, to establish the probability or improbabilty of the fact in issue. Gillett on Ind. and Col. Ev., sec. 51; Trull v. True, 33 Me. 367; Scott v. State, 56 Miss. 287; State v. O'Neil, 13 Ore. 183.

GOODE, J.—This action originated in the probate court of Ste. Genevieve county, where the plaintiff presented for allowance against the estate of J. M. Coffman, or Mack Coffman as he is called by the witnesses, the following promissory note:

"$1,000.                          September 22, 1898.

"One day after date I promise to pay to the order of John Obuchon, one thousand dollars, for value received, negotiable and payable without defalcation or discount, with inter-

est from date at the rate of six per cent per annum, and if the interest be not paid annually, to become as principal and bear the same rate of interest.        .        J. M. COFFMAN."

The note was stamped with two ten cent stamps; stamps cancelled by letters "J. M. C." on each, and by figures "9-22-98" on each stamp; indorsed on the back "November 1, 1898; received on the within note seventeen dollars ($17.00)."

Boyd, the administrator of Coffman's estate, consented to the note being allowed as a demand by the probate court after several mistrials therein, with a view to appealing the case to the circuit court for determination under appropriate pleadings and instructions. In the latter forum the execution of the note by Coffman was denied by a verified answer and the only issue was, whether Coffman's signature was genuine or a forgery? As the controversy turned on such an issue, it naturally aroused the partisanship and inflamed the passions of the rural neighborhood or hamlet where the parties and witnesses reside, to an unusual degree, and the record abounds with evidence assailing the reputations, blackening the characters and impeaching the testimony of several individuals. Contradictory statements, criminal charges and bad names were freely proven and rebutted by the respective sides, and the evidence introduced to establish the affirmative and negative of the issue is about as conflicting and unsatisfactory as it could well be. Obuchon's reputation suffered in the trial by intimations that he had been engaged in passing counterfeit money, as did one of his main witnesses' by impeachment and charges of larceny. On the other hand, it appears that Coffman was more or less intimate with those individuals and was befriending Obuchon when the latter was involved in trouble of a criminal nature, having become bail for his appearance to answer an indictment, out of which circumstance the note in question probably arose if it was really made by Coffman. Obuchon had turned over to Coffman one thousand dollars as an indemnity to the latter for becoming surety on his recognizance, or there is proof to

that effect, and Coffman executed and delivered the note to Obuchon as evidence that he had obtained the money, in case the recognizance was never forfeited, or else the money was actually lent; the testimony leaves the facts of the transaction between them ambiguous, conceding that a transaction in fact occurred.

The testimony is too conflicting and too nearly balanced for a court of error to interfere with the verdict on the ground that it was unwarranted or was the result of partiality or prejudice, and the judgment must stand unless some error was committed during the trial materially affecting the merits of the action.

In the first place, it is claimed the court below improperly received evidence by the respondent tending to prove a consideration moved to the deceased from the respondent for the execution of the note. This point is urged by the appellant in the following manner: that only one issue was joined by the pleadings, to-wit; whether Coffman's signature was subscribed by himself or forged by some one else; that therefore the inquiry should have been rigidly confined to that issue and no evidence received which did not tend to prove it one way or the other and that testimony concerning statements or admissions made by Coffman as to the consideration of the note, or any other matter than that he signed it, was irrelevant and prejudicial, as tending to confuse the jury.

The premise that only a single issue was to be tried, is sound, but the conclusion that all statements of Coffman save that he signed the note, or that the signature to it was his, were incompetent, is not. No statement or admission made by him was competent unless it tended to prove he executed the note or that it was his obligation; but the admission need not have been that he signed his name to the note, or any similar collocation of words, to have that effect. He may have made various statements and used various forms of expression from which the inference could properly be drawn that the instru-

ment in question was his promise and act. All that is required is that it should appear the deceased was talking about the note and knew he was talking about it and made a declaration in reference to it against his interest. Wynn v. Cory, 48 Mo. 346.

The effectiveness of this point as cause for a reversal of the judgment depends, then, on whether the statements of Coffman which were admitted on the trial, naturally and legitimately tended to enlighten the jury on the issue of forgery or not. We will examine this testimony in detail.

. George W. Kelly, a witness for the plaintiff, testified that he had seen the note in John Obuchon's possession in the fall of 1898 and was asked to tell the circumstances under which he saw it; to which question the appellant objected on the ground that it was immaterial, irrelevant and incompetent. Thereupon respondent's counsel explained that it was proposed to show the witness was in a land trade with Obuchon and that the latter gave him the note in controversy in part payment of the land, and the witness took the note to Mack Coffman and Coffman told him it was all right. The court excluded the circumstance in regard to the land, improperly we think, but allowed the witness to testify that he asked Coffman in relation to the note in suit and if any money was to be paid on it, and Coffman told him that he could not pay anything until after he had sold his wheat; but that the note was all right. He further said that he told Coffman it was a note for one thousand dollars. That testimony showed, if true, a direct admission by Coffman that he had made the note in suit to Obuchon.

Thomas Hudson was called as a witness for the plaintiff and testified that Obuchon showed him a note when he (the witness) wanted to borrow one hundred dollars from Obuchon. The witness said he could not read the note and only saw Obuchon hold it in his hand, telling him it was a note on Mack

Vol 92 app—27

Coffman. The witness then applied to Coffman for a loan, informing him that Obuchon had shown him (Hudson) a note and told him it was for one thousand dollars, whereupon Coffman said he had borrowed some money but had none to loan; that Coffman said he borrowed one thousand dollars from Obuchon but had paid it out.

That testimony was manifestly pertinent to the issue.

Thomas Perry was asked if Coffman told him anything in the fall of 1898 about having borrowed one thousand dollars from John Obuchon. Appellant objected to the question being answered on the ground that a promissory note imported a consideration and it was unnecessary to prove one. The court replied that the evidence was not admitted on that theory at all, but as tending to show an acknowledgment of the execution of the instrument. Whereupon the witness said: "I wanted to know about his having been made safe for one thousand dollars for going on his (Obuchon's) bond. Coffman told me that John Obuchon had let him have a thousand dollars in order to secure him on his bond and that he gave Obuchon his note for one thousand dollars." This conversation, the witness said, happened a short time before Coffman's death.

Fred Bryan testified that a conversation occurred between him and Coffman and Kelly in a field. This was the same conversation Kelly testified to as stated above, and was competent to be proven by this witness for the reasons given.

Lewis Powell testified that he was owing Mack Coffman fifteen dollars and didn't have the money to pay him and Coffman came to him and said he wanted his money. While this conversation was in progress, Obuchon came by and Powell asked Coffman if he would take Obuchon for what he (Powell) owed him, to which Coffman replied: "Yes, I will take Obuchon as I owe him now a note for one thousand dollars," and it was agreed that the fifteen dollars which Powell owed

Coffman should be credited on the note. This latter statement, however, was excluded by the court.

All the foregoing testimony tended strongly to prove the execution of the note by the deceased, that he had on different occasions admitted its execution and that he owed plaintiff the amount of money it called for. The only question was the weight to be given by the jury to what the witnesses swore, with which we have nothing to do.

Complaint is made of the following instruction, on the ground that it submitted as an issue the question whether the note was delivered by Coffman to Obuchon.

"If the jury find from the evidence in the cause that J. M. Coffman executed and delivered the note sued on in this case to the plaintiff John Obuchon, they will find for the plaintiff, and so finding will assess the plaintiff's debt and damages at the amount of said note and interest computed thereon down to the time of rendering their verdict, deducting therefrom any payment or payments which may be shown by the evidence to have been made upon said note, together with interest thereon from the date of making said payment down to the time of rendering verdict."

We must regard the objection made to that direction as frivolous. By no fair intendment can it be held to have raised an additional issue concerning the delivery of the note, nor to have added to the issue made by the pleadings concerning the genuiness of its execution. It was not executed in any proper sense unless it was delivered; if it was retained by the deceased it never became an obligation and could not be allowed against his estate. But the only purpose or import of the instruction was simply to tell the jury what damages they should award in case they found the note had been executed by the appellant's intestate, and delivered to plaintiff as an obligation.

It is assigned for error that the trial court permitted plaintiff's counsel to say in his closing argument; "That

Thomas Boyd, the administrator of J. M. Coffman, deceased, had the clerk of the Perry Circuit Court make and deliver to the sheriff of that county a certified copy of the appearance bond signed by J. M. Coffman for plaintiff, with directions that the sheriff deliver the same to plaintiff, take him and put him in jail, which he did; that this bond was for one thousand dollars, the exact amount of the note." These remarks are criticized on the ground that they were wholly outside the record and prejudicial to the defendant. Of course, the matter of keeping counsel in due bounds in their arguments to juries is one primarily and almost exclusively for the trial court. It is within that court's discretion to say when counsel shall be rebuked for improper remarks in their arguments; though it is not absolutely the final arbiter on the subject, for judgments have been reversed by appellate courts because the circuit court was remiss in its duty in failing to reprove transgressing counsel. This, like all other matters referred to the discretion of a trial court, can only be reversed by a court of error when it is palpable there was an abuse of discretion below. Huckshold v. Railway Co., 90 Mo. 548; Hoffman v. Hoffman's Ex., 126 Mo. 486. Was there in this case? Manifestly not, for the statement of respondent's counsel which was challenged, is shown by affidavits to have been made in answer to an improper statement concerning the same topic made by appellant's counsel. It was provoked by the statement made by one of appellant's counsel in his argument to the jury, that the deposit of one thousand dollars with Coffman by Obuchon would have been no security to the former as bondsman in the criminal case pending in Perry county, Missouri, and that Obuchon could have sold or traded the note in question to an innocent purchaser and fled, leaving Coffman to pay the bond in the criminal case on which he was surety, and that Obuchon could still flee and leave Coffman's estate to pay said note sued on if judgment was rendered in his favor for the amount thereof. This was an assertion that Coffman's estate was still

liable on Obuchon's recognizance which the respondent's counsel naturally tried to answer by showing that no loss to the estate was possible on account of the recognizance, because Obuchon had been surrendered. Moreover, the trial judge notified respondent's counsel to keep within the record when appellant's counsel objected to his said remarks. An improper remark by the attorney of one side does not throw open the door for an attorney of the other side to say what he pleases; but it may mitigate the blame of the latter to such an extent that a judge would feel unwilling to take him to task before a jury, though he would have done so if his unwarranted utterances had not been provoked by what went before. But unquestionably this incident furnishes no basis for a reversal of the judgment in view of the circumstances, which were peculiarly within the observation of the trial judge as the regulation of the arguments was within his discretion.

As to the point that defendant was denied an opportunity to poll the jury, we find an affidavit that one of defendant's counsel was present in court when the verdict was returned and made no demand to have it polled. To induce a reversal of a judgment on that ground, it would have to be shown that the party against whom a verdict was returned formally demanded a poll and was refused. No such showing is made by this record.

So far as we can see the case was tried without the slightest error and the judgment is affirmed. *Bland,* P. J. and *Barclay,* J., concur.