# LOCHER, Respondent, v. KUECHENMIESTER, Appellant.

### St. Louis Court of Appeals, November 27, 1906.

1. **PROMISSORY NOTE: Instrument Importing Consideration.** While a duebill is not a negotiable note, it is a promissory note and imports a consideration within the meaning of section 894, Revised Statutes of 1899.

2. **LIFE INSURANCE: Insurable Interest: Paying Money for Another.** Where an agent for a life insurance company advanced the money to pay the premium for the beneficiary in a policy and took the duebill of the beneficiary payable to himself, the beneficiary could not defend an action on the duebill on the ground that the policy was void because it insured the life of his brother in which he had no insurable interest; the advancing of the money by the agent was a sufficient consideration for the duebill.

3. ———: ———: **Insured Selecting Beneficiary.** While it is true that one has no insurable interest in the life of his brother and if he take out such insurance it is a void contract, yet where the insured himself selects his brother for his beneficiary and pays the premiums himself, the policy is a valid contract; the general rule is that one may insure his own life, paying the premiums himself, for the benefit of one who has no insurable interest in his life.

4. ———: ———: ———. Where two brothers, partners in business, agreed to take out insurance in favor of each other and one brother gave his duebill for the premium payable on a policy of the other, and where there was nothing to show that the other brother was not to repay him, the policy issued thereon was valid.

5. ———: **Attaching Application to Policy: Advancing Premium by Agent.** Where an agent for a life insurance company advanced a premium for the insured and took the duebill of the insured to himself, for the amount, the insured could not defend an action on the duebill on the ground that the policy was void for the reason the application was not attached to it as required by statute; the obligation of the insured to the payee on the duebill was supported by a valuable consideration in the payment of the premium.

6. **PRACTICE: Jury Question: Computing Interest.** Under sections 721-726. Revised Statutes of 1899, it is error to instruct a

jury, if they find for plaintiff, to render a verdict for the amount of the note sued on and interest, because it is the province of the jury to compute the interest, but in an action on a note, the amount of which with the interest was undisputed, where the plaintiff after verdict remitted the amount of the interest, such an error in the instruction was harmless.

7. ———: **Reprimanding Counsel.** To confine counsel to the record in his argument to the jury and to reprimand counsel for transgressing the direction of the court, are matters of discretion with the trial court, and reversals for failure to reprimand counsel are had only in cases where that discretion has been abused.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

Affirmed.

*John W. Drabelle* and *John A. Gilliam* for appellant.

(1) The paper writing introduced by plaintiff did not conform to the allegations of the petition and should not have been admitted in evidence. It was not a promissory note, and the characterization of it as a note by the petition by the plaintiff's attorney during that trial and by the court, in its instructions, was error. Norton on Bills and Notes, 29-31; Gay v. Rooke, 151 Mass. 115; Currier v. Lockwood, 40 Conn. 349; Fisher v. Leslie, 1 Esp. 426; Hyne v. Dewdney, 21 Law, J., Q. B. 278 (1852). (2) The court's instructions to the jury to find a lump verdict of $760 for principal and interest was invading the province of the jury, and was error, which was not cured by ordering a remittitur of $23.10 afterward; particularly as they expressly ignored all reference to the defense of $511.30, as to the non-insurable interest, and gave no explanation of the phrase, "for himself and brother." Dawson v. Wombles, 111 Mo. App. 532; Cates v. Nickell, 42 Mo. 169; Burghart v. Brown, 60 Mo. 24; Ryors v. Prior, 31 Mo. App. 555; Poulson v. Collier, 18 Mo. App. 583; Dyer v. Combs, 65

Mo. App. 146; Corbitt v. Mooney, 84 Mo. App. 645. (3) The first instruction given by the court for plaintiff having the unexplained phrase, "for himself and brother" was error, because of ignoring the defense of non-insurable interest, and was in effect a declaration that defendant was liable if he gave the duebill (wrongly called a note) and that he had an insurable interest, particularly as it gave the jury no instructions as to what state or condition of dealing, with or without authority from the brother, might make it a lawful obligation, and absolutely ignored the evidence of both brothers that Henry Kuechenmiester was not a creditor, but only a brother of John H. Kuechenmiester, and John H. had refused to accept the policy and had given no authority to Henry to execute the duebill or pay for the policy, and the same principles apply to the second instruction given for plaintiff, and they both required the jury to find both law and fact, and both instructions were misleading. Lesser v. Railroad, 85 Mo. App. 326; Cultivator Co. v. Railroad, 64 Mo. App. 311; Boothe v. Loy, 83 Mo. App. 601; Mansur v. Botts, 80 Mo. 651; Sheedy v. Streeter, 70 Mo. 679; Stewart v. Audes, 110 Mo. App. 243; Hoffman v. Perry, 23 Mo. App. 20; Hohstadt v. Daggs, 50 Mo. App. 240; Fitzpatrick v. Dooley, 86 S. W. 721. (4) The court erred in giving first and second instructions for plaintiff, and in refusing to give defendant's fourth instruction, because the instructions for plaintiff entirely ignored the defense of non-insurable interest in defendant in the life of John H. Kuechenmiester, and the court failed to give defendant's instruction which set up such lack of insurable interest which was clearly proved by the evidence, and which clearly showed that the policy on the life of John H. Kuechenmiester was as to the defendant, Henry Kuechenmiester, a mere wagering policy, and null and void. Singleton v. Ins. Co., 66 Mo. 72-76; Ashford v. Ins. Co., 80 Mo. App. 641; Aid Society v. McDonald, 1 L. R. A. 238; Roller v. Beam, 6 L. R. A.

136; Ins. Co. v. McCrum, 36 Kan. 146; Cammack v. Lewis, 82 U. S. 643; Reynolds v. Ins. Co., 88 Mo. App. 685-686; Lewis v. Ins. Co., 39 Conn. 100; Whitmore v. Ins. Co., 100 Mo. 36; Heusner v. Ins. Co., 47 Mo. App. 343-346; Trinity College v. Ins. Co., 113 N. C. 244, 22 L. R. A. 291; Burbage v. Windley, 108 N. C. 357, 12 L. R. A. 409; Seigrist v. Schmoltz, 113 Pa. 326; Life Ins. Co. v. Sefton, 53 Ind. 380; Kessler v. Kuhns, 1 Ind. App. 511; Ins. Co. v. Hazzard, 41 Ind. 116.   (5)  The court, against defendant's persistent objections and exceptions, admitted the applications in evidence, although they were in no way attached to or set out in the policy or the substance thereof, and although the main applications were altered, spoliated and mutilated, and the policies in no way conformed to the vital parts of the original applications, which was error and directly opposed to the statute.   Ins Co. v. Dunham, 117 Pa. St. 460-473; Ins. Co. v. Musser, 120 Pa. St. 384; Considine v. Ins. Co., 165 Mass. 462; Dow v. Whetten, 8 Wend. 160; Ins. Co. v. Folsom, 85 U. S. 237; Griffin v. Equitable Co., 84 S. W. (Ky.) 116; R. S. 1899, sec. 7929; Albro v. Ins. Co., 119 Fed. 629.   The closing speech of plaintiff's attorney was a misconduct which was prejudicial to defendant, and was not properly rebuked by the court, and was unfair practice which influenced the verdict.   Estes v. Railway, 111 Mo. App. 1; State v. Pierce, 111 Mo. App. 220; Wojtylak v. Coal Co., 188 Mo. 285.

*O'Brien & Collier* for respondent.

(1)  The instrument sued on is a note, and section 894 does not affect the question here involved.   Finney v. Shirley, 7 Mo. 42; McGowen v. West, 7 Mo. 569; Prather v. McEvoy, 8 Mo. 661; Ubsdell v. Cunningham, 22 Mo. 124; Brady v. Chandler, 31 Mo. 28; Weil v. Tyler, 38 Mo. 545; Daniels Neg. Ins., section 36 a *et seq.;* Wulze v. Schaeffer, 37 Mo. App. 551; Hoffman v. Trust Co., 68 Mo. App. 177.   (2)  Our statute with reference to ap-

plications being annexed to policies does not refer to such policies as were introduced in evidence, and, if it does, it is not intended that failure to comply with the statute invalidates the policy. Ritter v. Ins. Co., 169 U. S. 139; Ins. Co. v. Dunham, 117 Pa. St. 460; R. S. 1899, sec. 7929; Elliott v. Safety, etc., Assn., 76 Mo. App. 566. (3) Appellee's instructions were based on evidence in the case, and state the law correctly. Knoche v. Whiteman, 86 Mo. App. 571; German v. Gilbert, 83 Mo. App. 416; Delaney v. Bowman, 82 Mo. App. 252; Green v. Higham, 161 Mo. 333. The court promptly stopped appellee's counsel when objection was made, and its ruling shows that appellant's counsel committed the first offense. What was done was within the court's discretion. Obuchon v. Boyd, 92 Mo. App. 420.

STATEMENT.—This is a suit on a promissory note. The facts material to the controversy are as follows. The defendant and his brother John H. Kuechenmiester. are the sole owners of the stock of a corporation, the St. Louis Paper Can and Tube Company, which corporation does a manufacturing business and has its office in the city of St. Louis. It appears that the two brothers, Henry and John H. Kuechenmiester, desired each to insure his life in favor of the other brother so that in the event of the prior death of either, the survivor might realize available cash from such insurance to purchase from the estate of the deceased brother the shares of stock owned by him in the corporation mentioned and continue the business thereof. The plaintiff is the general agent in St. Louis of the New York Life Insurance Company, and as such, called upon the defendant, Henry Kuechenmiester and his brother, John H. Kuechenmiester, at their place of business,July 29, 1904, to procure their applications for such insurance. After some negotiations, each brother made application for a policy in said company in the amount of $10,000 on his life in

favor of the other brother. There is some conflict in the testimony as to what kind of insurance was applied for, the two brothers maintaining that each applied for a $10,000 twenty-premium policy on his life in favor of his brother, whereas the agent maintains that the policies were to be ordinary life policies. We do not regard this as material, however, in the light of the subsequent conduct of the parties. At any rate, the agent procured the application from each brother for a $10,-000 life insurance policy in favor of the other brother and transmitted the same to the company. When these propositions for insurance were submitted to the home office of the company in New York, it did not see fit to approve the same in the form submitted and therefore erased therefrom the words "joint life" and issued to the defendant Henry Kuechenmiester, an ordinary life policy for $10,000, payable to his brother, John H. Kuechenmiester, otherwise in accord with his application therefor. Upon an examination of the application for insurance on the life of John H. Kuechenmiester, it discovered that it was stated in said application that both itself, the New York Life Insurance Company, and the Prudential Insurance Company, had theretofore declined to issue policies on his life and further, that because of certain facts which were made to appear in the medical examination, said John H. Kuechenmiester was found to be an undesirable risk. Thereupon the company rejected the proposition for insurance as submitted in his application and declined to issue the policy he desired. The company, however, did issue a policy known as a 4.10 lien policy on his life and mailed it to the plaintiff, its agent, along with an amended application for the insured to execute asking such insurance, provided he saw fit to accept the same. The policy which the company issued was for a much higher rate of premium than the one for which he originally applied. It provided in su bstance that in the event of his prior death at any time before seven years from its

date, the company would pay to Henry Kuechenmiester, his brother, the sum of $6,000 instead of $10,000 as originally applied for by him, and that in event of his death after seven years from that date, it would pay to Henry Kuechenmiester $10,000, etc. The matter seems to have been considered for a considerable time by the company as the policies were not issued until September. They were written to take effect July 21, 1904, however, as requested by the insured on their original application of date July 29, 1904. The two policies were received by the plaintiff, the general agent, from the company on September 26, 1904, and on that date he called upon the defendant, Henry Kuchenmiester and his brother, John H. Kuechenmiester, at their place of business for the purpose of submitting the policies and inducing them to accept the same as written. Thus far, there is no material discrepancy in the evidence of the parties on either side. As to what occurred on this occasion, the parties do not agree and we will therefore set forth the version of each.

The plaintiff says that on September 26th, he called upon the Kuechenmiester brothers at their office and presented the policies; that the policy issued to defendant, Henry Kuechenmiester, was the identical policy which he had applied for and that no objection was made thereto by him. The policy issued to John H. Kuechenmiester subject, of course, to his acceptance, instead of a $10,000 ordinary life, was a $10,000 policy with a 4.10 lien against it; or, in other words, the policy was for $6,000 for the first seven years and for $10,000 thereafter; that the insured therein, John H. Kuechenmiester, demurred at accepting the same, inasmuch as it was not the policy for which he had applied; that he said he did not want the policy with a lien against it, etc., and that the rate of premium was higher than that for which he had applied and that he did not feel able to pay so much premium. Some conversation between the parties ensued; that the defend-

ant Henry Kuechenmiester, was entirely satisfied with his policy, and after discussing the matter, took up the argument with his brother, John H. Kuechenmiester and insisted that he had better accept the policy proffered inasmuch as he had been declined theretofore by this and the Prudential Company and that his physical condition was such as to render it difficult for him, if not impossible, to obtain insurance elsewhere; that finally, in consideration of these facts, John H. Kuechenmiester agreed to accept the policy as issued; that then the defendant, Henry Kuechenmiester became conservative and suggested that inasmuch as the premiums on the two policies were about $136 more than was anticipated, it was doubtful as to whether they could, just at that time, spare so much money from their business and they took up their check book and figured on their balance in bank, etc., and while they were thus engaged in checking up the bank account, John H. Kuechenmiester suggested to defendant, Henry Kuechenmiester: "Well, I think you had better give him a check for the $225 and some cents premium on your policy and give him a note for the premium on mine," and Henry Kuechenmiester replied: "No, I don't want to do that. I would rather wait a few days." (It seems from the testimony that Henry Kuechenmiester had charge of the books in the office of the concern in which they were both interested, kept the bank account and signed all checks and that John H. Kuechenmiester had charge of the manufacturing department. This may explain the suggestion that Henry should give the check and note mentioned.) At this time plaintiff states: "And I said to them, 'Here, as it seems to be only a question as to when you want to pay the money, we can do away with that; give me a due bill and put these policies in force, because you can't afford to go uncovered,' and I said in order to get all the advantages coming from this contract, I would pay the company for them on the 30th day of September, and I

said: 'Now, you give me a duebill and put them in force and I will pay the company and we will decide as to what time it shall be paid when I come back.'" That both brothers were present and participated in the discussion with reference to the check proposition and the note proposition, examination of the bank accounts, etc., and when the plaintiff suggested the duebill proposition; and that both of them consented to accept the policies and execute the due bill; that John H. Kuechenmiester thereupon signed and executed the amended application for his policy as issued, which amended application is in evidence before us, and that at this time, John H. Kuechenmiester was called to another part of the store and plaintiff drew up the duebill for the amount of the premiums on the two policies, Henry Kuechenmiester signed the same in the absence of his brother, and the plaintiff departed, taking the duebill with him and leaving them in possession of the policies.

The suit is predicated upon the duebill mentioned. It is denominated a promissory note in the petition. It is in words and figures as follows:

"St. Louis, September 26, 1904.
"Due W. H. Locher, seven hundred, thirty-six and 90-100 ($736.90), dollars.
"HENRY KUECHENMIESTER."

Plaintiff further states that on September 30th, he met the defendant, Henry Kuechenmiester, on the corner of Broadway and Locust streets, and said to him: "This is the day I have to pay the premiums to the company," and defendant said: "Do as you like." Henry Kuechenmiester also said: "My brother wants to see you," and the plaintiff replied that he would see him as soon as he could; that he thereupon remitted to the insurance company on that date the amount of such premiums, less his commission, and on October 3d or 4th, called upon John Kuechenmiester, in obedience to

the request communicated to him by Henry Kuechenmiester, when John H. Kuechenmiester requested him to take the matter up with the insurance company and induce it to reduce the amount of said policies one-half, as the premiums were more than they felt like paying, and John H. Kuechenmiester said: "If you can induce them to reduce these policies to $5,000 each, I will give you a check for the entire premium at once." Thereupon the plaintiff requested him to give him a check for one-half of the duebill and he said: "No, you are out the money now and will make a stronger effort to get the company to do this." On that day or the next, plaintiff wrote the company requesting them to reduce the policies and showed John H. Kuechenmiester a copy of the letter, which he said was satisfactory to him. About October 12th, the plaintiff received a reply from the company declining to accede to the request and this letter was also shown to John H. Kuechenmiester, whereupon he said: "Well, I am going to see somebody about this first." Plaintiff replied: "I am perfectly willing that you shall see anybody you want to," and said: "Shall I give you a copy of this letter?" John H. Kuechenmiester replied: "I don't care anything about it. I am not going to pay it." And plaintiff said: "Now, that ain't the way to talk." John H. Kuechenmiester replied: "I am not going to pay it," and to this, plaintiff said: "I have got the duebill; that is enough for me. I guess you will pay it." It was shown that a demand was made on defendant to pay the duebill and that he declined to pay it.

In defense to the action, the defendant and his brother testified to the facts in the main as above indicated. They disputed, however, that they accepted the policies and that the duebill was given in consideration of the plaintiff paying the premiums to the company for them. While they admit that the plaintiff called September 26th and delivered the policies, that they read and examined the same, discussed the matter

pro and con, looked over their bank books in his presence to see if they could afford to pay the premiums, etc., they maintain that neither of the policies complied with their original application, insisting that both policies were to be twenty premium life policies, whereas the policy issued to the defendant was an ordinary life policy, and that issued to John H. Kuechenmiester, a 4.10 lien policy as hereinbefore stated, and in consideration of the facts stated, declined to accept the same; that they merely retained the policies, giving the duebill as a receipt therefor, under a verbal agreement to the effect that the plaintiff was to induce the company to issue policies in accordance with their original applications, or otherwise satisfactory; that they do not remember of John Kuechenmiester having signed the amended application of that date, although they do not deny the signature; that John H. Kuechenmiester was called to another part of the building and then Henry Kuechenmiester, in his absence and without his knowledge or consent, executed the duebill simply as a receipt for the policies and in order to place the same in force while they retained the policies pending the plaintiff's negotiations with the company seeking to obtain other policies in their stead, etc. They stoutly deny that they authorized the plaintiff to remit the premiums thereon to the company on September 30th as testified to by him and while the defendant admits having met the plaintiff at the corner of Broadway and Locust streets on September 30th, he denies that plaintiff said anything about remitting the premiums on that date or that he, the defendant said: "Do as you like." He says that he told the plaintiff that his brother wanted to see him and that was the extent of the conversation. It was shown that the defendant and his brother retained the policies until some time in the early part of November when they returned the same by registered mail to the plaintiff; that the plaintiff declined to accept them and returned the same to the insured; that the policies were

returned to the plaintiff a second time and by him returned again to the insured.

The answer is an extended document, containing six counts. The first count admits the execution of the duebill and pleads want of consideration therefor. The second count sets up a verbal agreement with the plaintiff at the time of the execution of the duebill to the effect that the policies were left with the defendant for inspection, etc., that in event they were found not to comply with the original applications, the plaintiff promised to supply policies which would comply with such written applications; that the policies were found not to comply with the original applications and that the plaintiff has failed to furnish policies which would and therefore there is a failure of consideration for the duebill. The third count pleads that the duebill was obtained by plaintiff by fraud, deceit and circumvention, without consideration, etc.; that the policies delivered were not those applied for; admits that on the date of the delivery of the policies, plaintiff obtained an amended application for insurance from John H. Kuchenmiester; says that the same was obtained by plausible statements without explaining the meaning thereof, etc., and avers that in event the policies were found not to be satisfactory to the defendant and his brother, the plaintiff would furnish policies in lieu thereof which would be satisfactory; that the due bill was obtained upon these representations, etc. The fourth count pleads failure of consideration, because, defendant says, that so much of said paper writing as represented the premium on the life of John H. Kuechenmiester was void inasmuch as the defendant had no insurable interest in the life of his brother. The fifth count denies that the paper sued on is a promissory note, that it was executed for value received, etc., sets up the alleged agreement before mentioned and avers that there is a failure of consideration of $511.30 thereof which represented the premium on the life policy of John H.

Kuechenmiester inasmuch as the same predicated upon a wager contract as defendant had no insurable interest in the life of his brother. The sixth count pleads want of consideration as to $511.30 included in the duebill, the same being a premium on the life of John H. Kuechenmiester on the ground that the same was a wager contract, inasmuch as the defendant had no insurable interest in the life of his said brother and that the remaining $225.60 of the duebill, which represents the premium on the life policy of the defendant, was unenforceable because the said policy did not have attached thereto nor indorsed thereon the application for the same or the substance thereof as provided by statute.

The reply was a general denial. On a trial before a jury, the court, on behalf of the plaintiff, gave two instructions as follows:

"1. The jury are instructed that the policies introduced in evidence do not refer to or make the application therefor any part of the same, and it is immaterial whether they conform to said application or not, if you believe that they were accepted by the assured and instead of paying the annual premium therefor in cash, defendant, for himself and brother, gave the note sued on upon plaintiff's promise to account for such premiums to his company a day thereafter then named, and that he did so account to said company, and defendant knowing that he intended to so account, permitted him to do so to his loss and injury, then your verdict in that event should be for the plaintiff in the sum of said note and interest, amounting to $760."

"2. If the jury believe from the evidence, that defendant knew and agreed, that in consideration of the giving of the note sued on, plaintiff was to account to the New York Life Insurance Company for the first annual premiums on the policies referred to in evidence by the day named, and defendant sought in no way to prevent his so accounting and the assured held without protest or objection said policies until said day had

passed, and that plaintiff did so account for said premiums, on or before said day, then any pecuniary damage suffered by plaintiff in so accounting constitutes sufficient consideration for the giving of said note, and your verdict should be for plaintiff for the principal of said note, with interest amounting to $760."

On behalf of the defendant, and at his request, the court gave the following instructions to the jury:

"1. The jury are instructed that if they believe from the evidence that plaintiff secured the duebill in question by fraudulent representations that policies of insurance on the life of John H. Kuechenmiester and the defendant, Henry Kuechenmiester, conformed to plaintiff's representations in regard thereto, and defendant's and his brother's applications therefor, and by his agreement that if defendant would give said duebill he would leave said policies for examination by defendant and his brother, and if they were not satisfactory on examination he would secure and deliver policies that were satisfactory, and if the jury believe from the evidence that defendant and his brother were not satisfied with said policies. and that plaintiff failed to get policies that were satisfactory, and that defendant and his brother tendered said policies back to plaintiff and the New York Life Insurance Company, his principal, then the jury are instructed there was no consideration for said duebill, and they should find for the defendant on said duebill.

"2. The jury are instructed that if they believe from the evidence that the duebill in question was as to two hundred twenty-five and sixty-hundredths dollars thereof and interest thereon, represented by a premium on the policy on the life of Henry Kuechenmiester, and as to so much of said duebill it was given in the nature of a receipt to protect plaintiff while defendant retained said policy for examination, and that plaintiff agreed that if said policy was not satisfactory to defendant, and a policy was not delivered to defendant

that was satisfactory, the duebill for the amount of said policy was to be cancelled and the policy taken back by plaintiff, and if the jury further believe from the evidence that said policy was not satisfactory and was not made satisfactory to defendant, then the jury should find for the defendant as to so much of said duebill as represented the aforesaid premium on the life of defendant.

"3. The jury are instructed that if they believe from the evidence that the duebill in question was as to five hundred eleven and thirty-hundredths dollars thereof and interest thereon, represented by a premium on the policy on the life of John H. Kuechenmiester, and as to so much of said duebill it was given in the nature of a receipt to protect the plaintiff while defendant and his brother retained said policy for examination, and that plaintiff agreed that if said policy was not satisfactory to defendant and his brother, and a policy was not delivered to defendant and his brother, that was satisfactory, the duebill for the amount of said policy was to be cancelled and the policy taken back by plaintiff, and if the jury further believe from the evidence that said policy was not satisfactory to defendant and his brother, and was not made satisfactory to defendant and his brother, then the jury should find for the defendant as to so much of said due bill as represented the aforesaid premium on the life of said John H. Kuechenmiester."

The court refused to instruct at the instance of the defendant, that as to so much of the duebill which represented the premium on the policy of John H. Kuechenmiester, namely, $511.30, and the interest thereon from September 25, 1904, they should find for the defendant on the ground that he had no insurable interest in the life of his brother, John H. Kuechenmiester, and that the contract to make such payment was void in law. The court refused to instruct at the instance of the defendant that the statute of this State re-

quiring that in all stipulated premium policies the company issuing the same shall attach to such policy or indorse thereon the substance of the application upon which the policy was issued, that such application is thereby made a part of the contract of insurance referred to therein; that the policies in evidence in this case came within the operation of such statutes and that as such applications or substance thereof were not attached to or indorsed thereon, the plaintiff could not recover. The court also refused to instruct at the instance of the defendant, that the application of Henry Kuechenmiester in evidence called for two policies of $10,000 each, joint life, and that if the jury believe from the evidence that the policies issued were not each for $10,000 and were not joint life policies, the defendant on that ground alone had the right to reject and return the policies and that if he had so rejected and returned the same, the finding should be for the defendant.

On consideration, the jury returned a verdict for the plaintiff in the sum of $760, the amount of the due-bill and interest. A motion for new trial was filed in due time and the court required the plaintiff to, and the plaintiff did, remit $23.10 of such verdict representing the interest thereon calculated by the court, whereupon said motion was overruled and judgment entered on such verdict, and remittitur, for $736.90 being the face of the duebill sued upon. The case comes here by appeal.

NORTONI, J. (after stating the facts).—1. The duebill is as follows:

"St. Louis, September 26, 1904.

"Due W. H. Locher seven hundred, thirty-six and 90-100 ($736.90) dollars.

"HENRY KUECHENMIESTER."

The petition treats it as a promissory note, and is in the usual form employed in such cases designating the writing sued on as a note. The defendant insists,

first, that the paper writing is not a promissory note; that inasmuch as it does not contain a promise to pay in express words, it does not import a consideration under the provisions of our statutes (sec. 894, R. S. 1899), and that the court erred in admitting the same as evidence of the indebtedness mentioned prima facie without requiring the plaintiff to prove further that it was executed for a valuable consideration. Our statute referred to (sec. 894, R. S. 1899), provides that all instruments of writing made and signed, etc., "whereby he shall promise to pay to any other . . . any sum of money . . . shall import a consideration," etc. The question therefore is, in the absence of an express promise to pay, does the paper contain an equivalent of such express promise in words which import a promise to pay so as to bring it within the influence of that provision of the statute which imports consideration on a promise to pay? It is true that the paper is not a negotiable note, as it does not recite that it was executed "for value received," and to be a negotiable instrument, it must contain words, "for value received." [Sec. 457, R. S. 1899; Bailey v. Smock, 61 Mo. 213; Taylor v. Newman, 77 Mo. 257; International Bank v. German Bank, 3 Mo. App. 362.] It is settled that non-negotiable instruments, by force of the statute (sec. 894), import a consideration (Montgomery Co. v. Auchley, 92 Mo. 127, 4 S. W. 425; Taylor v. Newman, 77 Mo. 257), and that under the provisions of that statute all promises for the payment of money, whether conditional or absolute, likewise import a consideration. [Wulz v. Schaefer, 37 Mo. App. 551.] The fact that the paper does not contain express words of promise to pay does not preclude it from being a promissory note within the meaning of the law. It is well settled that the employment of the word "due" in a paper of this nature imports a promise to pay. The principle is that if the paper contains a direct acknowledgment of indebtedness in a specied sum, this of itself imports a promise

to pay and therefore under the statute last cited, imports a consideration and the instrument is a promissory note within the meaning of the adjudicated law. [Finney v. Shirley, 7 Mo. 42; McGowan v. West, 7 Mo. 569; Ubsdell v. Cunningham, 22 Mo. 124; Brady v. Chandler, 31 Mo. 28; 1 Daniel, Negotiable Instruments (5 Ed.), sec. 36a; Norton, Bills and Notes (3 Ed.), 30.]

2. It is next insisted by the defendant that the court erred in rejecting his proposition embodied in defendant's refused instruction number four to the effect that plaintiff could not recover so much of the premium represented in the duebill as pertained to the insurance on the life of John H. Kuechenmiester on the theory that such premium arose out of a void contract as being in the nature of a wager for the reason, he asserts, that the defendant had no insurable interest in the life of his brother, the evidence showing that Jno. H. Kuechenmiester was not his debtor nor had other pecuniary interest in his life. We are not impressed with this argument for two reasons, either one of which is eminently satisfactory. The first is, we regard it as entirely immaterial on the evidence in this case whether the contract in this respect was or was not void, inasmuch as the jury found the fact to be that the defendant and his brother accepted the policies and that the defendant executed the duebill in consideration of the plaintiff's paying the premiums thereon to the company on September 30th. Now, if this is true, and in the light of the jury's verdict, it must be so understood, it was wholly immaterial whether the plaintiff, acting for the defendant, advanced the money to the company on a contract void or valid in law. The crucial question is, did he advance the money at the instance and request of the defendant and in consideration therefor, receive the duebill on the payment of which he was to be reimbursed? The jury found this fact for the plaintiff and we are unable to appreciate how plaintiff's right

of recovery on the duebill could be either abrogated or abridged by the fact that the defendant requested and procured him to pay out money on a void contract or, in other words, on a debt which could not be enforced by the insurance company against the defendant. But aside from this, there is a second and valid reason why this theory of the case and the refused instruction should have been rejected. It is that on the evidence in the record before us the premium mentioned did not arise out of a contract void on account of its being in the nature of a wager. It is very true and it is the law of this State, that one brother has no insurable interest in the life of another brother in the absence of some pecuniary interest such as creditor or something of that sort, in such a sense as to permit one brother to take out an insurance on the life of his brother in favor of himself. In such cases, the contract is condemned as a wager and void as being against public policy. [Masonic Ben. Assn. v. Bunch, 109 Mo. 560, 19 S. W. 25; Reynolds v. Prudential, etc., Co., 88 Mo. App. 679; 3 Amer. and Eng. Ency. Law (2 Ed.), 929.] This principle does not obtain, however, with respect to such contracts as are made between the insured and insurer. In such cases, the proposed insured applying for insurance on his life, can select any person he sees fit for his beneficiary thereunder, whether that person has an insurable interest in his life or not, so long as he confines himself within the limits of good faith and acts without fraud, the principle being that if the insured himself, in good faith, is willing to enter into a contract whereby an interest may accrue to another which would tend to offer temptation to the beneficiary to dispose of the insured in order that he might obtain the insurance, the insured is permitted so to do and the courts will decline to declare the contract void as against public policy. Mr. Cook, in his work on Life Insurance, states the law thus:

"Insurable interest unnecessary, where the contract is between insurer and insured. Assuming the soundness of the doctrine of insurable interest, it seems a proper limitation on the application of it, that where the insured himself makes the contract with the insurer, he may select as beneficiary one having no insurable interest. This is seemingly on the ground that, if the insured himself chooses to place his life in a situation of hazard, there is no sufficient reason for preventing him from doing so." [Cook on Life Insurance and Mutual Benefit Societies, sec. 60.]

See also 3 Am. & Eng. Ency. Law (2 Ed.), 929, where the rule stated does not preclude a recovery on or condemn a contract as void when entered into by the insured and the insurer but only precludes the beneficiary contracting with the insurer for insurance on the life of one in whom he has no insurable interest. Indeed, this proposition is abundantly well settled by the adjudicated cases and this, too by the courts of this State, and it is the rule with us that one may, of his own free will, in good faith, insure his life, paying the premiums therefor himself, for the benefit of another who has no insurable interest therein and the policy will be held valid. The proposition is pointedly decided in the following Missouri cases: Ashford v. Ins. Co., 80 Mo. App. 638; Van Cleave v. Union Casualty Co., 82 Mo. App. 668; Reynolds v. Prudential Co., 88 Mo. App. 679. Our Supreme Court, in express terms, recognized the principle and cited Cook on Life Insurance, sec. 60, above quoted in Masonic Ben. Assn. v. Bunch, 109 Mo. 569-578-579. This court in McFarland v. Creath, 35 Mo. App. 112-122, also recognized the principle. [See also Connecticut Life Ins. Co. v. Schaefer, 94 U. S. 460; Aetna Life Ins. Co. v. France, 94 U. S. 561; Ingersoll v. Knights of Golden Rule, 47 Fed. 272.] It is true the cases of Ashford v. Ins. Co., 80 Mo. App. 638, and Van Cleave v. Ins. Co., 82 Mo. App. 668, are expressly overruled by the Supreme Court in Kern v. Supreme

Council Legion of Honor, 167 Mo. 471, 67 S. W. 252, but a careful reading of the opinion in that case demonstrates that it was on another and distinct question those cases were overruled and that their authority on the proposition here in judgment is not criticised.

Now with this rule before us, let us examine the facts. The defendant, Henry Kuechenmiester, did not take out insurance on the life of his brother, nor did John H. Kuechenmiester take out insurance on the life of Henry Kuechenmiester. The evidence shows that each brother, of his own free will and in good faith, insured his own life in favor of the other brother. There is no word in the evidence to the effect that Henry Kuechenmiester was to pay for the insurance of John H. Kuechenmiester, as between themselves, even though he executed the duebill to cover the premiums on both policies. The defendant, having pleaded the wager contract and no insurable interest, it devolved upon him to develop the facts in proof which would bring the case within the rule which he seeks to invoke. This he wholly fails to do. While it is true the duebill was executed by Henry Kuechenmiester alone, the evidence on the part of the plaintiff tends to show that it was done with the authority and consent of John H. Kuechenmiester given immediately prior to his being called out of the room and that as between the brothers, John H. Kuechenmiester was of course to pay for his policy, or in other words, his premium; whereas the evidence on the part of the defendant is that the duebill was executed as a mere receipt for the policies and that neither he nor Henry Kuechenmiester was expected to pay the premium on either policy. There is not a word in evidence tending to show that as between these parties, Henry Kuechenmiester, the beneficiary in the policy of John H. Kuechenmiester, was to pay the premiums on the policy of John H. Kuechenmiester and it devolved upon the defendant

to so show. And it further appears conclusively from all the evidence, that Henry Kuechenmiester, as between the brothers, was not expected to pay the premium on the life policy of John H. Kuechenmiester, for on several occasions both prior and after the signing of the duebill, John H. Kuechenmiester urged the objection that the premium on his policy was so large that he could not afford to pay it. Nothing was said between them indicating that Henry Kuechenmiester was to pay his premium. In fact, the matter which seemed to worry him more than any other was the large premium he was called upon to pay upon his own policy. There is nothing in the record here indicating that Henry Kuechenmiester insured the life of John H. Kuechenmiester and was to pay the premium thereon in that sense which would bring the policy within the purview of the rule which prohibits one person from obtaining insurance on the life on another on whose life he has no insurable interest. It is palpable that each brother, of his own violition and in good faith, insured his own life in favor of the other, on his own account, and in no sense is the case one where one person obtains insurance on the life of another under such circumstances as to render the policy void as a wager. The court very properly rejected this theory of the case. As said before, the proposition advanced was entirely irrelevant, however, to the facts of the case as we view them.

3. It is next insisted that the court erred in refusing to instruct that as the applications for the policies or their substance was not set out in or attached to the policies, the policies were void and therefore there was no consideration for the duebill and plaintiff cannot recover. We do not understand such to be the law of this case. Whatever might be the opinion of the court on this question, were the suit one by the insurer against this defendant for the premiums on the policies, which question is not before us, we certainly know of no principle in our jurisprudence which would render these

policies void in the hands of the insured by reason of this default of the insurer and preclude a recovery by the insured on the policies for no other reason than that the company which issued them failed to comply with the statute by annexing the copies or the substance of the applications thereto. But aside from this, the question seems entirely irrelevant on this record. Suppose the policies were void for the reasons stated, and that in a suit by the company against the insured for the premium, it could not recover, yet the insured could pay the premium if he saw fit to do so, or he could cause another person to pay it for him and if the plaintiff, at the instance and request of the defendant, advanced the means and discharged the debt, which the defendant was under no valid obligation in law to pay, and for that consideration, the defendant executed the due-bill in evidence, the law will hold him to respond to the plaintiff therefor even though the debt discharged by plaintiff at his request arose out of a void undertaking and one that could not have been enforced against him. The court properly refused the instruction.

4. It is next insisted that as the court instructed the jury in event their finding should be for the plaintiff, the verdict should be for the amount of the note and interest, to-wit, $760, that this was reversible error inasmuch as under the authorities in this State and the construction by the Supreme Court of our statutes, secs. 721-726, R. S. 1899, providing that in suits for a recovery of money only, "the jury shall assess the amount of the recovery;" that it is error for the court to compute the interest on the note and instruct the jury that their finding, if for the plaintiff, must be in a certain sum, as this invades the domain of the jury, it being in such suits the peculiar province of the jury to calculate the interest, or in other words, "assess the amount of recovery." This rule is discussed and the authorities cited in Dawson v. Wombles, 111 Mo. App. 532, 86 S. W. 271. See

also Cates v. Nickell, 42 Mo. 169; Burghart v. Brown, 60 Mo. 24; Ryors v. Prior, 31 Mo. App. 555; Poulson v. Collier, 18 Mo. App. 583; Dyer v. Coombs, 65 Mo. App. 148; Corbitt v. Mooney, 84 Mo. App. 645. In none of the cases last cited, where the court was held to have invaded the province of the jury by either computing the amount and instructing for a fixed sum or correcting a verdict so as to include interest, was the error corrected by remittitur, as it was in the case now in hand. It is very true that under these authorities, the instruction for a fixed amount, including principal and interest, was error, but in this case, the issue was not the amount of the recovery so much as it was whether the plaintiff should recover at all on the duebill. Under the evidence, the real question in decision was, whether the duebill was given in consideration of the plaintiff's paying the premiums to the company and to reimburse the plaintiff for his advancement of such premiums, or whether it was obtained by him through deceit, and should be held to be a mere receipt for the policies, etc., as contended by the defendant, and on this issue, if plaintiff was entitled to recover at all, he was entitled to recover the face of the bill and interest after demand. Under the issues as made by the evidence and the law of the case, the amount of the duebill not being a controverted fact, we are persuaded that while the court committed technical error in computing the interest and instructing for an amount certain, that this error was properly rectified by the learned trial judge in requiring a remittitur of the $23.10 interest on a hearing of the motion for new trial. This is not a case where the jury were erroneously instructed on the measure of recovery, except on the item of interest, which was remitted. Nor does the instruction, aside from the computed interest, include improper elements by which a recovery, if any, could be measured. The error was eliminated by the remittitur. [Creve Coeur Lake Ice Co. v. Tamm, 90 Mo. App. 189.]

5.   There were certain letters, the contents of which had been given to some extent in evidence by the parties on either side, but the letters themselves, as well as their contents, were excluded by the court on objection. Plaintiff's counsel in his concluding argument, in reply to the argument of defendant's counsel, made the following allusion thereto, and the following objection and colloquy was had and the court ruled as therein indicated, to which exception was saved, as stated in the record as follows:

"Now, when he talks about these letters here, he prevents you from knowing what is contained in those letters and he asks you to take his version of what those letters contain.

"Mr. Gilliam: I object to that, for the testimony is excluded and the gentleman is not permitted to talk about them.

"Judge Collier: You talked about them and pretended to tell the jury why we should have sent them, but I wanted them in here, and I want to keep them in.

"The Court: One moment; confine yourself to the testimony that is admitted.

"Judge Collier: Your Honor, he discussed them.

"The Court: Well, if you had called him down, I would have stopped him.

"Judge Collier: Very well, the court says I can't discuss them.

"Defendant's counsel excepted to the action of the court in not reprimanding counsel for improper argument and not directing the jury to disregard the same."

A reversal of the judgment is asked here because the court did not reprimand counsel in the presence of the jury. Now the matter of confining counsel to the record in the argument of a case is one peculiarly within the province of the trial judge and the matter as to when counsel should be reprimanded for transgression in that behalf is one within the sound discretion of the court in

which the alleged offense occurs, and although cases are sometimes reversed for the failure of the court to administer proper rebuke under such circumstances, reversals are not always had therefor. In other words, there is no hard and fast rule on the subject in such a sense as will warrant a reversal in every instance of transgression and failure to reprimand on objection and exception, inasmuch as the exercise of this discretion by the trial court must be measured by the facts and circumstances surrounding each particular instance. Reversals are only had in such cases when it is manifest that the court abused its discretion. Now, the record presented here upon which the defendant asks a reversal, discloses that the plaintiff's counsel first offended, and that it was in reply to improper argument and comments advanced by him that defendant's counsel made the remarks complained of. It is true that as a rule an offense of this nature on the part of one counsel will not necessarily open the way for a free hand to the same end by counsel representing the adverse party, but such conduct by counsel in the first instance had, in the presence and hearing of the trial court, as it is, necessarily appeals to and influences its judgment in exercising that sound discretion with which it is vested by the law in the trial of a case, which conduct can only be fully understood and appreciated by the judge presiding. And such conduct by the first transgressor may so mitigate the offense of the other as to make it appear unjust and unfair to the trial court to reprimand counsel complained of in the presence of the jury in an instance where the court would otherwise administer a proper rebuke. In view of this statement of the law, as we understand it, it is not manifest to this court that the learned trial judge abused a sound discretion in this instance. [Obuchon v. Boyd, 92 Mo. App. 412.] It will be noted by reference to the remarks of plaintiff's counsel that he did not attempt to state the contents of the letters nor

did he comment on their contents whatever that might have been, prior to the court's admonishing him to confine his remarks to the record, and for this reason we would be unable to hold the remarks so improper, in the absence of a reprimand, as to warrant a reversal.

There are other questions in the briefs. We have examined each and find them of no merit, and without prolonging the opinion, which is now unduly extended in a case where the issues are so few and simple, they will be overruled. The judgment is manifestly for the right party and it will be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.