GARRARD STRODE, Administrator of Estate of ELLEN A. ABBOTT, Respondent, v. ELLENORE ABBOTT, Appellant.

St. Louis Court of Appeals, November 3, 1903.

1. **Practice**: VERDICT SUSTAINED WHEN EVIDENCE CONFLICTING. A verdict for plaintiff will not be disturbed on account of insufficient evidence, unless there is such a dearth of evidence to sustain it as convinces the appellate court that the jury acted arbitrarily and from passion.

2. **Evidence**: EXCLUSION OF IRRELEVANT. In an action for damages for inducing plaintiff's husband to desert her, evidence that plaintiff participated in causing him to leave a former wife, was properly excluded.

Appeal from St. Louis City Circuit Court.—*Hon. S. P. Spencer*, Judge.

AFFIRMED.

*Henry R. Hall* for appellant.

It is error for the trial court to refuse a new trial when the preponderance of the evidence against the verdict is so strong as to raise a presumption of prejudice, corruption or gross ignorance on the part of the jury. Walton v. Railway, 49 Mo. App. 620; Spohr v. Railway, 87 Mo. 74; Lyonberger v. Pohlman, 16 Mo. App. 392; Friesz v. Fallon, 24 Mo. App. 439.

*Hickman P. Rodgers* for respondent.

GOODE, J.—We are asked by the defendant to review the evidence in this case on an assignment that the verdict for the plaintiff's intestate was due to the jury's prejudice and corruption, instead of the facts. We have perused the entire record and must overrule the assignment as not well taken.

The action is one for damages and rests on allegations that the defendant, who was the deceased's mother-in-law, maliciously induced deceased's husband to desert her less than a year after their marriage. The husband, Walter Abbott, had been previously married to another woman, from whom he obtained a divorce, then married the deceased and immediately took her to reside with his mother, the defendant. This marriage occurred November 8, 1899. The defendant received her new daughter-in-law coldly, ignored her and refused to speak to her much of the time, from a belief, the defendant says, that the plaintiff had caused the separation of Walter Abbott and his first wife. This conduct of the defendant, for that reason, was singular; for she swore that she herself assisted her son in procuring the divorce from his first wife. The latter sometimes came to the home of the defendant to see her child, which was retained by its grandmother. On these occasions defendant seated the divorced wife beside Walter Abbott and unpleasantness resulted. Defend-

ant admits she treated the new wife "with contempt" and spoke of her as a prostitute, but denies that she endeavored to cause a separation and says that, to the contrary, she told her son to live with the deceased if he loved her.

Abbott deserted deceased in September, 1900, and sued her for a divorce, but failed to get it; which circumstance weighs in favor of her innocence of the charges preferred against her character.

Testimony was received tending to prove deceased had illicit relations with men while she lived with Abbott, which caused him to leave her; and there was testimony to rebut that accusation.

On the main issue of whether the defendant caused the desertion, there was much testimony to sustain the averments of the petition. Deceased swore the defendant repeatedly called her vile epithets, quarreled with her, sought to introduce the first wife between herself and her husband, telling said wife "to get her fighting clothes on and make all the trouble she could;" declared she (defendant) would disown her son and never take him back in her heart until he was away from his second wife or dead; also that defendant threatened never to let her son see his child's face again if he continued to live with deceased.

Mrs. Jennie Tuttle swore the defendant told her that she (defendant) had no use for Ellen Abbott (the deceased) and would cause a separation between her and her husband if she (defendant) had to move heaven and earth; that said Ellen was unfit to be his wife and she would not let them live together; would "feed her (said Ellen) hell for her meals until she got her out of the house," and that Walter Abbott could never be her son until his wife was dead or they were separated.

Charles Wood, who lived in the same house with the parties, swore the defendant would eavesdrop Abbott and his wife to learn if they were quarrelling and

remarked a hundred times that she would separate them "if it took heaven and hell to do it."

Mrs. Ella Wood, wife of witness Charles Wood, swore defendant said she believed the second wife was a curse sent on her on account of her son leaving his first wife; that she would give the deceased "hell for breakfast, dinner and supper" and separate them if she had to turn heaven and earth; that Abbott said he loved his wife better than any one else on earth, and when witness asked him why he did not, then, take her away from his mother, he said he dared not do so.

Those witnesses all swore that the defendant constantly referred to the deceased by designations which signified that she was a prostitute.

The defendant testified concerning her behavior to her daughter-in-law; saying, among other things, that she ignored her because "she was not a woman of good character and I had every reason to believe that she had separated my son and his first wife and had taken her place and the place of the mother of her child.".

The above recitals suffice to show that the testimony was conflicting and that much of it upheld the deceased's cause of action. The decision of where the preponderance inclined was first for the jury and afterwards for the trial judge in considering the motion to set aside the verdict; never for this court unless there is such a dearth of evidence to sustain the verdict as convinces us the jury acted arbitrarily and from passion. But that conclusion is impossible in view of the very strong testimony which underlies the jury's finding.

An exception was saved to the exclusion of some testimony tending to show the deceased participated in causing Robert Abbott to leave his first wife. That testimony had no bearing on the question of whether the defendant induced him to leave his second wife, which was the issue on trial; neither would it excuse the defendant for so doing.

There is no point raised against the instructions given to the jury, but it is proper to remark that they were so drawn as to authorize a verdict for the deceased only in case the jury found that the deceased maliciously and wrongfully induced Abbott to leave her and that, although the defendant took part in causing the separation, yet if defendant did so in the honest belief, based on good reasons, that her son's wife's conduct after her marriage was such as justified her husband in leaving her, the verdict should be in defendant's favor. Under that charge the jury must have disbelieved the testimony tending to prove deceased was guilty of adultery and have believed, instead, that the defendant, actuated by a malevolent motive, brought about the separation without cause.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.