DAVID TRIPP, Appellant, v. IRWIN JORDAN, A. M. BAIN, FREDERICK L. CHESNEY and MUTUAL LIFE INSURANCE COMPANY, OF NEW YORK, Respondents.

**Kansas City Court of Appeals, February 16, 1914.**

1. **EQUITY: Fraud and Deceit: Cancellation of Assignments of Life Insurance Policy.** The plaintiff sued to cancel two assignments of a life insurance policy obtained from him by fraudulent representations. The policy could be surrendered about one month after the assignments were procured, for $1289. When the defendant Jordan procured the first assignment he agreed to give plaintiff $489 in cash and one-half interest in a poultry business. Jordan then reassigned the policy to Bain for $1249 and obtained an affidavit as to the title, from the plaintiff under the guise that it was a new assignment. *Held,* that the assignment to Bain must be held as being made subject to the equities subsisting between the plaintiff and Jordan.

2. ———: **Life Insurance: Assignment: Insurable Interest.** An assignment of a life insurance policy, to one who has no insurable interest in the life assured, is void as falling within the rule against wagering policies.

3. ———: ———: ———: ———. When one of two innocent parties must suffer for the wrongful act of another as applied to non-negotiable instruments, the one who puts the party in the position to do it must be the sufferer, but where there exists an element wanting in transfers of other kinds of non-negotiable instruments as in the case of the assignment of a life insurance policy to one who has no insurable interest in the life of the assured, the rule does not apply.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED.

*J. H. McVay* and *T. A. Witten* for appellant.

Defendant, Jordan, acquired no interest whatever in the policy by virtue of the assignment executed to him by Tripp. (1) Because the assignment was procured by fraud and Tripp received nothing whatever

for it. (2) Because it was void in law for the reason that Jordan had no insurable interest in the life of Tripp, and the assignment was not made to secure a debt due from Tripp to Jordan. It was therefore against public policy and wholly void. Heusner v. Mutual Life Ins. Co., 47 Mo. App. 343; Mutual Life Ins. Co. v. Richardson, 99 Mo. App. 93; Bruer v. Life Ins. Co., 100 Mo. App. 540; Stokes v. Meyer Bros. Drug Co., 101 Mo. App. 627; Jenkins v. Morrow, 131 Mo. App. 288; Deal v. Hainley, 135 Mo. App. 507. Defendant, Bain, acquired no right in the policy as an innocent purchaser for value, without notice. Heusner v. Mutual Life Ins. Co., 47 Mo. App. 343; Locke v. Bowman, 168 Mo. App. 121.

*Hadley, Cooper, Neel & Wilson* for respondents, Bain and Chesney.

(1) A life insurance policy is assignable and the assignment thereof is valid. McFarland v. Creath, 35 Mo. App. 112, 122; Heusner v. Mutual L. & Co., 47 Mo. App. 343; Baker Trustee v. Young, 47 Mo. 453, 456. (2) Even though the assignee have no insurable interest in the life of the insured an assignment of a life insurance policy to such an assignee is not void if there is no wagering feature in the assignment nor benefit to the assignee by the death of the insured. McFarland v. Creath, 35 Mo. App. 112. If one or two innocent parties must suffer for the wrongful act of another, the one who puts the party in the position to do a wrong must suffer. Hayner v. Crow, 79 Mo. 293, 296; Neuholft v. O'Reilly, 93 Mo. 149.

JOHNSON, J.—Action in equity to cancel assignments of a life insurance policy issued November 11, 1891, by defendant insurance company to plaintiff and payable to his wife in the event of his death. In 1907, plaintiff and his wife were divorced and in a settlement of property rights she assigned her interest as

beneficiary to him. The policy known as a "Limited Payment Twenty Year Distribution Policy" required the payment of premiums for twenty years and was fully paid at the time of the transactions in controversy which occurred in October, 1911. Twenty years after the date of the policy (November 11, 1911), plaintiff, by its terms, became entitled to surrender it to the company and receive $1289 as its full cash value.

In answer to a newspaper advertisement plaintiff called on defendant Jordan and the interview ended in an agreement for them to become partners in the business of raising poultry. Jordan was not acting in good faith but made false and fraudulent representations for the purpose of defrauding plaintiff. When he learned that plaintiff had no ready money but owned a policy that could be converted into cash in a month and had an ascertained value of $1289, he offered to buy the policy for that sum and to pay the purchase price by applying $800 to the payment of plaintiff's contribution to the capital of the partnership and paying the remainder of $489 to plaintiff in money. The offer was accepted by plaintiff and on October 9, 1911, he delivered the policy to Jordan and executed and acknowledged a written assignment thereof to him. A plausible excuse enabled Jordan to procure the consent of plaintiff to wait a week for his cash payment of $489. Jordan employed this period of grace in a successful effort to effect a resale of the policy. In a way not now important, he was brought into negotiations with defendant Bain who had money and was willing to buy the policy at a profitable discount provided everything was found to be all right. He examined the policy and the assignment from plaintiff and consulted the agent of the insurance company. Convinced by these sources of information that the policy could be converted into $1289 on November 11th, following, and being advised that a regularly executed assignment of it for a valuable consideration would be

valid, he agreed to buy it at the price of $1249, provided that Jordan would have plaintiff "come and participate in the transaction." Jordan explained that the personal participation of plaintiff was inconvenient but that an affidavit could be procured from him to the effect that when he sold and assigned the policy he had a good title thereto free and clear of all claims or encumbrances, that no prior assignment had been made, that he was not a bankrupt and that he had a "good right and full power to assign said policy as above set forth." Bain said he would be satisfied with such affidavit and Jordan telephoned plaintiff to come to his office. Plaintiff complied with the summons and was informed by Jordan that his lawyer had found some flaw in the assignment and had prepared another for plaintiff to execute. Plaintiff could not read without his glasses and had none with him but on being assured that the paper handed him was practically the same as the assignment, he signed it and swore to it before a notary public. The paper was an affidavit Jordan prepared in compliance with Bain's requirement. Assured by Jordan that a check for $489 would be sent him the following day, plaintiff departed. Afterward Jordan delivered the policy and affidavit together with a written assignment executed by himself to Bain who paid Jordan $1249 in full of the agreed purchase price. Failing to receive the promised remittance, plaintiff again went to Jordan's office, found it vacant and on investigating learned that Jordan had decamped with the proceeds of the policy. He brought this suit including Jordan, Bain and the insurance company as defendants, to set aside the assignment from himself to Jordan and from Jordan to Bain and for an injunction to restrain the insurance company "from paying said money to said Bain or to any person to whom the said Bain may assign or pretend to assign said policy."

The charge in the petition is that Jordan and Bain

conspired to defraud plaintiff. After hearing the evidence the court rendered a judgment based on the finding that Jordan had defrauded plaintiff but that Bain was an innocent purchaser for value from Jordan. The judgment rendered required the defendant insurance company to pay $1289 to the clerk of the court and after deducting the costs, awarded the remainder of the proceeds to Bain. Plaintiff appealed.

Our examination of the record convinces us that the court correctly solved the issues of fact. Without going into the details of the evidence or mentioning any but the controlling facts, we find that plaintiff and Bain were the victims of the duplicity of Jordan who, from the beginning, was actuated by the intent to procure and convert to his own use the proceeds of plaintiff's policy which, for all the purposes of the case, as presented to us, may be treated as an absolute obligation of the insurance company to pay plaintiff $1289 on November 11, 1911.

It is apparent, and is conceded by both parties, that neither Jordan nor Bain had an insurable interest in the life of plaintiff and the rule is of general acceptation that an assignment of a life policy to one who has no insurable interest in the life assured, is void as falling within the rule against wagering policies. [Heusner v. Insurance Co., 47 Mo. App. l. c. 343, and authorities cited.]

Aside from this restriction, obviously founded on sound considerations of public policy which recoil at the idea that one may enter into a wagering contract on the life of another, a life policy is assignable as any other chose in action, and may be lawfully assigned as security for an indebtedness of the assured, though the creditor has no insurable interest in his life.

We are willing to concede for argument the soundness of the position of counsel for defendant Bain that the transaction in question was devoid of any wager-

ing feature and that had Jordan, acting in good faith and without fraudulent practices upon plaintiff, pro- cured the first assignment for a valuable considera- tion, Bain as the assignee of Jordan would be entitled to the proceeds of the policy. We are not to be un- derstood as giving our sanction to this position, ex- cept *arguendo,* for the purpose of reducing our dis- cussion of the case to the single proposition that the fraud of Jordan permeates the whole transaction and defeats Bain in his claim to the proceeds.

Counsel for Bain seek advantage from the rule "that when one of two innocent parties must suffer for the wrongful act of another, the one who puts the party in the position to do it must be the sufferer." [Neuhoff v. O'Reilly, 93 Mo. 164; Hayner v. Crow, 79 Mo. 293; Turney v. Hoyle, 95 Mo. l. c. 245; Inter- national Bank v. German Bank, 71 Mo. 183; Clifford Banking Co. v. Donovan C. Co., 195 Mo. 283; Prather v. Hairgrove, 214 Mo. l. c. 159; Strode v. Abbott, 102 Mo. App. 169.]

It was said in the case from which the rule is quoted that if the owner of a non-negotiable instru- ment clothes another with the usual evidence of owner- ship and a third person is led thereby into dealing with such transferee as the true owner, he must be protected on the ground that the original assignor is estopped from disputing "the existence of the title or power which through negligence or mistaken confidence he caused or allowed to be vested in the party making the conveyance."

But in the present case there exists an element wanting in transfers of other kinds of non-negotiable instruments which precludes Bain from yoking him- self with plaintiff as the passive one of two innocent sufferers from the wrongful act of another. Not only was the policy non-negotiable but on its face the as- signment to Jordan being made to one who had no insurable interest in the life of plaintiff was prima

facie void (Locke v. Bowman, 168 Mo. App. 129, and cases cited), and being so the *onus* was cast on Bain of ascertaining its validity before he parted with his money. Neither the assignment nor the affidavit of plaintiff contained any express or implied representation tending to controvert the prima-facie character of the transaction. They told Bain that plaintiff had a good title, that there were no claims against the policy, and that he had sold the policy to Jordan for value but they did not purport to show that Jordan had either an insurable interest in the life of plaintiff or was in the position of a creditor exempted from the prohibitive rule against wagering contracts. The documents he had before him when he parted with his money still proclaimed the assignment to Jordan as being prima facie void as not conveying a legal title from plaintiff to Jordan and in accepting a title so defective, he placed himself in the position of a negligent rather than an innocent victim of the guile of another. Under such circumstances plaintiff is not estopped from disputing the title of Jordan since at no point in the transaction may it be said that he clothed Jordan with the apparent legal title to the policy and thus enabled him to deceive another. It is fair to presume that Bain, had he fairly discharged the *onus* cast on him by the prima-facie stamp of invalidity the law placed on the assignment, i. e., had made such inquiries as an ordinarily careful and prudent person would have made respecting the character of the relationship between plaintiff and Jordan which culminated in the assignment, he would have learned the facts which, instead of refuting the presumption of invalidity, would have unmistakably confirmed it. The assignment to Bain must be held as being made subject to the equities subsisting between plaintiff and Jordan.

The judgment is reversed and the cause remanded. All concur.