## JOHN T. LEE, Appellant, v. EQUITABLE LIFE ASSURANCE SOCIETY, et al., Respondents.

Kansas City Court of Appeals, November 27, 1916.

1. **LIFE INSURANCE: Insurable Interest: Public Policy.** One who has no insurable interest in the life of another cannot insure that other's life. The contract for such insurance is void as against public policy.

2. ————: **Assured: Stranger: Contract.** Though the contract of a stranger insuring for his own benefit another's life is void as against public policy, yet an insured, himself, may insure his life for a stranger and the contract will be valid.

3. ————: ————: ————: **Assignment: Lapsed Policy.** An assured himself taking out a policy of life insurance, paying the premiums therefor, may make a valid assignment of it to a stranger who has no insurable interest. This rule applied in a case where a policy with three paid premiums lapsed with a surrender value.

4. ————: **Life Policy: Assignment: Infant: Ratification.** Where an infant assigns a policy of life insurance to a third party and after becoming of age during a period of seventeen years fails to take any steps to assert the fact of infancy and by other acts affirmatively recognizes the assignment, he will be held to have ratified it.

5. ————: ————: **Conflicting Claims: Interplea.** Where an insurance company is sued by a person to whom it had issued a life policy and another claims the sum due on the policy by assignment from the assured and threatens to sue for it, the company may set up the facts, its willingness to pay to the proper party and ask that they be required to interplead.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

AFFIRMED.

*N. B. Hays* for appellant.

*Walker & Walker, N. T. Gentry* and *W. Hall Trigg* for respondents.

ELLISON, P. J.—Plaintiff's action is based on a policy of life insurance. The policy was issued by defendant company to plaintiff (then not twenty-one years old) on April 18, 1895, and it was therein promised by the company that in consideration of certain annual premiums, it would pay to plaintiff on the 18th of April, 1915, the sum of $5000, if he should be alive, and if not alive, to his mother Sue Lee, if she should be alive, and if not, to plaintiff's heirs. The policy provided that after payment of three premiums if it should lapse for nonpayment of any other premium, it should have a certain surrender value. Plaintiff paid three premiums and the policy lapsed with a surrender value of a paid-up policy for $750. He (being still an infant) then sold and assigned it, his mother joining, to W. W. Trigg for the sum of $225. A party named Vaughn acted as his agent. Trigg then surrendered the policy to the defendant com-

pany and had the latter endorse its liability thereon for said $750, payable in April, 1915, the day the original sum was to have been paid, and returned it to Trigg who still has it. This action by plaintiff is to recover the surrender value of $750 and was brought against both the company and Trigg.

Defendant company admitted the issuance of the original policy and its subsequent obligation to pay the sum of $750 and alleged its willingness to do so, but stated the claim of Trigg (with his threat of suit) as opposed to plaintiff and asked the court to require plaintiff and Trigg to interplead for such money. The interpleas were filed and a contest had, resulting in the court finding for Trigg on his interplea.

On the merits of the case, the ground of objection to Trigg's right is that he, being a stranger, with no insurable interest in plaintiff's life, could not insure such life, nor could he become the assignee of a policy covering such life. It has been the rule in this State that the contract of an insurance company with a stranger to insure another's life was void as being against public policy. [Singleton v. Ins. Co., 66 Mo. 63; Whitmore v. Supreme Lodge, 100 Mo. 36; Ryan v. Ins. Co., 117 Mo. App. 688.] And that this rule applies with equal force to an assignment of a policy. [Huesner v. Ins. Co., 47 Mo. App. 336; Mutual Life v. Richards, 99 Mo. App. 88; Locke v. Bowman, 168 Mo. App. 121; Tripp v. Ins. Co., 177 Mo. App. 339.]

But that rule, and the reason for it, do not find application to insurance taken out by the assured *himself* for the benefit of one not having an insurable interest in his life. While in the instance of strangers insuring the life of another, it would be setting a price on that other's head, and thereby make it to the interest of the stranger that he should die, yet where the assured takes the policy the case is different. As said by the Supreme Court of George in Life Assurance Co. v. Patterson, 41 Ga. 338, ''It would seem, when the person whose life is insured is himself the actor in the matter, the amount of temptation held out to others to take his life, may, as a

general rule, at least, be left to *his* discretion." [Ashford v. Ins. Co., 80 Mo. App. 638; Locher v. Kuechenmiester, 120 Mo. App. 701.] This distinction in application of the rule is stated in May on Insurance, sec. 339; Cook on Life Ins., sec. 60, and it is specifically recognized in Masonic Ben. Assn. v. Bunch, 109 Mo. 569, 578, 579.

Every reason exists for applying the distinction, or exception to the general rule, to instances where the assignment of the policy is made by the assured to one not having an insurable interest in his life. In the instance before us, plaintiff himself, as the assured, assigned the policy to Trigg, the premiums on which he had himself paid and which Trigg immediately had converted into the surrender value for the specific sum above mentioned. It follows that the trial court was right in awarding the money to Trigg, unless for the following considerations.

Plaintiff denies that he assigned the policy to Trigg, but we find the evidence abundantly sustains the assignment. The testimony of experts was introduced with other admitted signatures. Some of the latter were, by consent, submitted for our inspection and we feel satisfied with the trial court's conclusion.

Next, plaintiff insists that no case was made justifying the order to interplead. We think there was. The case belongs to that class where the courts have frequently required an interplea as a convenient and proper mode of adjusting the rights of disputants to a common fund in the hands of a person who stood indifferent between them, admitting that he had the money and only wanting to know to whom it should be paid. But in addition to this, plaintiff came in by way of interplea process and entered upon his contest with Trigg.

But plaintiff insists that by none of the steps he took at the trial, neither interplea, demurrer or other pleading, did he waive the objection that no cause of action was stated by Trigg in his interplea. The point of objection on this head is that it was not stated that Trigg had an insurable interest in the life of plaintiff. The answer to this is already made in what we have above written, viz, that the insurance having been taken out by

the assured himself and by him assigned to Trigg, the rule of insurable interest does not apply.

Plaintiff interposes the further objection that being an infant when he made the assignment, it did not bind him. It is true that an infant, with notable exceptions, is incapable of contracting. But on his majority, he may ratify what his infancy would permit him to disavow had he chosen to do so. He became of age in about eighteen months after March, 1898, the date of the assignment. He has not had the policy up to the bringing of this suit, a period of near seventeen years. He knew. that Trigg had it and yet took no steps to take it from him. He stated that he told him, perhaps twice, that he would contest his right to it; the last time just before he started to take up his residence in Arkansas, between four and five years before the trial. He admits (evidence in chief in his own behalf) that as late as July, 1913, he wrote to Trigg from Arkansas. This letter contains the statement and admission that Trigg had bought the policy from Vaughn, who, as we have seen, was his agent. It is true that he complains that Vaughn never paid him "one cent" and had stolen what Trigg paid him. And from this latter consideration plaintiff stated in the letter, that Trigg should accept from him what he, Trigg, had paid with six per cent interest. He never intimated to Trigg that Vaughn had forged his name to the assignment.

Besides the admissions of plaintiff and the circumstances shown in evidence, we have the testimony of Trigg himself that plaintiff told him he was going to send Vaughn to him with the policy for the purpose of selling it to him and his acknowledgment made once or twice afterwards in conversations.

We repeat that we consider the evidence abundantly shows plaintiff's genuine signature to the assignment; that he procured Vaughn to make the sale to Trigg and that he ratified the sale not only by a course of silence through many years but by affirmative statements.

A careful examination of the record has left us with no other course but to affirm the judgment. All concur.